IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DENNIS RUDD,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
|    **v.** | ) Civil Case No. 1:06-cv-0233-WKW |
| | ) |
| **GENEVA COUNTY** | ) |
| **COMMISSION,** *et al.*, | ) |
| | ) |
|    **Defendants.** | ) |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT
GENEVA COUNTY COMMISSION'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant, Geneva County Commission, and submits this Memorandum Brief in Support of its contemporaneously filed Motion for Summary Judgment.

**INTRODUCTION**

The Plaintiff, Dennis Rudd (hereinafter the "Plaintiff"), filed suit against Defendants Sheriff Greg Ward (hereinafter "Sheriff Ward") and the Geneva County Commission (hereinafter the "Commission"), for injuries sustained due to a beating from a fellow inmate. On September 10, 2007, this Court dismissed the Plaintiff's claims against the Commission under the Fourth, Fifth, Fourteenth, and Seventeenth Amendments. The Plaintiff's Eighth Amendment claims against the Commission remain.

In this Court's Order dated September 10, 2007, it recognized that the Commission could not be held vicariously liable for the actions of the sheriff or his employees. However, the Court decided to leave the Eighth Amendment claims against

1

the Commission pending for resolution upon motion for summary judgment because the Plaintiff had alleged various facility issues.

## NARRATIVE SUMMARY OF UNDISPUTED FACTS[1]

The Geneva County Jail is a well-kept and clean facility. (Exhibit A, Deposition of Greg Ward, "Ward Dep.," at 46:4-7.) Originally, the county built the jail in 1964. (Exhibit B, Deposition of Harry Adkison, "Adkison Dep.," 11:22-23.) In 1995, the Commission started an ongoing effort to upgrade and improve the facilities. (Adkison Dep. 14:22-15:2; 16:6-9.) During that time, upgrades were made to the plumbing, electrical, and water supply, and the cells have been maintained through cleaning and repainting. (Adkison Dep. 14:17-21.) Just prior to 2005, a mold problem occurred and because it was unknown whether the mold was dangerous, the inmates were moved to other facilities until the problem was fixed. (Ward Dep. 32:10-33:10.) When the mold was fixed, not only were the walls sandblasted and repainted, but also a new air conditioning system was installed that uses fresh outdoor air rather than recirculated air. (Ward Dep. 34:3-9.)

From 2000 through 2003, the jail housed between thirty-five to forty inmates. (Ward Dep. 51:5-7.) In 2004, due to the methamphetamine epidemic, there was a sudden increase in the jail population. (Ward Dep. 51:7-11.) As a result, Sheriff Greg Ward believed that the jail would become insufficient within ten years, and he recommended building a larger facility to the Commission. (Ward Dep. 50:20-51:18.) In response, the Commission considered several options, then opted to increase the jail capacity by

---

[1] The facts in this section are either admitted by the Plaintiff, or the Plaintiff is unable to dispute them through the introduction of admissible evidence. In accordance with the standard of review for summary judgment, the facts are set out in a light most favorable to the Plaintiff. The Commission reserves the right to dispute the Plaintiff's version of the facts at trial.

2

building a domed annex, which indeed succeeded in easing the jail capacity issues. (Ward Dep. 52:13-5:21.)  In January 2006, construction on the domed annex was completed, which increased the jail's capacity by fifty-two beds. (Adkison Dep. 15:6-20.)  At the time of the Plaintiff's incarceration in the Geneva County Jail, the jail had a forty-two bed capacity at that time. (Ward Dep. 49:10-14.)  From February 18, 2005 to February 25, 2005, the jail housed forty-nine inmates. (Ward Dep. 56:15-21; Exhibit C, Capacity Log at p. 4.)

During February, 2005, the Commission was providing sufficient funding for maintenance and repairs at the jail. (Adkison Dep. 13:4-9.)  If Sheriff Ward or Carl Rowe, Geneva County Jail Administrator (hereinafter "Rowe"), had been aware of any such need, they would have contacted the Commission and requested the funding and ensured that the maintenance or repairs were completed. (Adkison Dep. 13:4-9.).  The Commission has always provided adequate funding for any maintenance or repairs that were needed and would have provided funds to remedy any such situation. (Adkison Dep. 13:4-9.)

During February, 2005, neither the Commission nor Sheriff Ward was ever aware of any problem regarding staph infections or inmate violence. (Adkison Dep. 24:6-14.)  If they had been aware of any problem, they would have remedied the situation, and the Commission would have provided the necessary funding. (Adkison Dep. 13:4-9.)

During the months of early 2005, the Geneva County Jail was not overcrowded, and there was adequate space for every inmate. (Adkison Dep. 13:10-14:1.)  If the Commission had known of a need for additional space at the jail, it would have provided funding to remedy the situation. (Adkison Dep. 13:4-9.)

The Commission does not have the authority to promulgate or enforce policies or procedures for the day-to-day operation of the Geneva County Sheriff's Department or the Jail. (Adkison Dep. 24:15-17.) The Commission did not contribute in any way to any decisions regarding the Plaintiff's or any other inmate's treatment at the jail. (Adkison Dep. 16:20-17:6.)

If the Commission is ever made aware of a deficiency in the jail, it takes steps to remedy the situation. (Adkison Dep. 13:4-9.) Every year the Commission budgets an amount that it expects will be spent on the jail. (Adkison Dep. 9:12-16.) However, if the cost exceeds the budgeted amount, the Commission provides the additional funding. (Ward Dep. 9:12-16.)

At all times relevant to Plaintiff's claims, it was the policy of the Geneva County Sheriff's Office that persons incarcerated in the Geneva County Jail be housed in humane and sanitary conditions. (Exhibit L, Affidavit of Carl Rowe, "Rowe Aff.," at ¶ 10.) In fact, inmates were provided cleaning materials each day so they may sanitize the living areas of their cells, under the supervision of a member of the jail staff, and all jail common areas are cleaned by trusties every morning. (Rowe Aff., at ¶ 10.)

To ensure inmate safety, Sheriff Ward requires his staff to perform random searches and check on each cell every hour. (Ward Dep. 59:3-23.) If an inmate believes that he is in danger from another inmate, the jail policy is to move him. (Ward Dep. 12-16.) Sheriff Ward takes such requests in person. (Ward Dep. 25:19-26:3.) Additionally, such requests can be made by filing an Inmate Request form. (Ward Dep. 16:6-11.) When Sheriff Ward receives an Inmate Request form, even if the request is minor, he will deal with it immediately. (Ward Dep. 24:21-25:5.)

On January 6, 2005, the Plaintiff was arrested for the manufacture and possession of methamphetamines and placed in the Geneva County Jail. (Exhibit D Deposition of Dennis Rudd, "Rudd Dep.," 26:1-6, 65:4-6; Exhibit E, Inmate Booking Sheet dated Jan. 6, 2005 at p. 1.) At that time, the Plaintiff noted that he had previously been treated for mental illness and hypertension. (Inmate Booking Sheet at p. 2.) On January 8, 2005, jailers took the Plaintiff to the emergency room because he had a high fever and chills. (Rudd Dep. 54:8-55:4, 71:11-72:2; Ward Dep. 35:2-6.) At the emergency room the Plaintiff was diagnosed with a staph infection. (Rudd Dep. 54:19-55:5.) According to his mother, the Plaintiff had staph before being housed at the jail. (Ward Dep. 35:6-9; 36:11-16.)

Upon learning of the Plaintiff's staph infection, Sheriff Ward quickly made arrangements for him to receive medical treatment at a VA Hospital. (Ward Dep. 35:9-17.) On January 10, 2005, although unable to post any bond, the Plaintiff was permitted to sign his own bond and then released to go to the hospital for further treatment. (Rudd Dep. 57:19-58:20; Ward Dep. 35:9-12; Exhibit F, Prisoner Activity Sheet at p. 1.) The Plaintiff was treated at the hospital for approximately one month before being sent home. (Rudd Dep. 59:2-4.)

On February 10, 2005, the Plaintiff was again placed in the Geneva County Jail for failure to appear at court for the methamphetamine charges. (Ex. F. at p. 2; Exhibit G, Inmate Booking Sheet dated February 10, 2005 at p. 1.) At this time, the Plaintiff noted that he had been treated for mental illness, hypertension, drug addiction, and hepatitis.

(Ex. G at p. 2.)[2]  The Plaintiff was placed in a cell with twelve bunks, and the Plaintiff slept in a bunk on the floor. (Rudd Dep. 61:7-9.)

According to the Plaintiff, on the evening of February 23, 2005, David Allen Payne (hereinafter "Payne") and two other inmates drafted a document that stated the following:  they wanted the Plaintiff moved from his cell, they knew the Plaintiff had staph and hepatitis, and his life was in danger. (Rudd Dep. 43:13-21.)  Payne then instructed the Plaintiff to give the document to Sheriff Ward. (Rudd Dep. 36:4-6.)

The next day, on February 24, 2005, the Plaintiff contends he met with Sheriff Ward and provided the Sheriff the document drafted by Payne, which the Sheriff refused to sign. (Rudd Dep. 36:17-37:2.)  The Plaintiff testified that Sheriff Ward refused to transfer him immediately, because he had nowhere else to put him. (Rudd Dep. 36:12-16.)  Instead, the Plaintiff contends that Sheriff Ward told him that he knew the inmates in his cell and neither Payne nor any other inmate would harm him.[3] (Rudd Dep. 36:12-16.)  Before returning to his cell, the Plaintiff contends that he had Payne's document witnessed and notarized, gave Payne a copy, and placed his copy in a little box under his bunk. (Rudd Dep. 37:1-6; 45:21-23.)

---

[2] Page one of Exhibit G has a date of February 10, 2005 and page two has a date of January 10, 2005.  This is not an error by the Defendants.  The Geneva County Booking Sheet is a single page double sided form; thus, the front was labeled February and the back mislabeled January.  The Plaintiff would not have filled out a booking sheet on January 10, 2005, because he was released on that date.

[3] The Plaintiff never provided Sheriff Ward an Inmate Request form requesting a transfer or stating that he believed he would be assaulted. (Ward Dep. 24:2-7.)  During his incarceration, the Plaintiff submitted no Inmate Request form nor was there any such form in his file. (Ward Dep. 40:10-12.)

6

On the evening of February 24, 2005, Payne, and possibly two other inmates, assaulted the Plaintiff for approximately thirty seconds.[4] (Rudd Dep. 41:9-17; 49:2-4; Ward Dep. 36:18-37:1.) The Plaintiff contends that, after the assault, Payne removed the Plaintiff's copy of the document that Payne drafted the prior evening from the storage box under the Plaintiff's bunk. (Rudd Dep. 37:9-10.) The Plaintiff was taken to the emergency room for treatment after his assault, and he remained there for approximately two weeks. (Rudd Dep. 49:16-51:3.) During his stay at the hospital, the Plaintiff was diagnosed with and treated for post traumatic stress disorder, hepatitis c, hypertension, and pulmonary obstructive disease. (Rudd Medical History Ex. M.) When the Plaintiff was returned to the jail, he was placed in a two-person cell where he would be alone, and he regularly received medications. (Ward Dep. 64:7-11; Rudd Dep. 52:12-14.)

Plaintiff never filed an inmate request form seeking medical treatment of any kind, nor did he file a grievance form complaining about any purported denial of medical care. (Rowe Aff., ¶ 9.) Had Plaintiff actually requested necessary medical care in addition to the treatment he received, it would have been provided to him. (Rowe Aff., ¶¶ 5-8.)

At all times relevant to the Plaintiff's claims, it was the policy of the Geneva County Jail that all inmates are permitted to submit grievances to the jail administration and that each grievance will receive a response. (Rowe Aff., ¶¶ 14-15.) The Plaintiff submitted no grievance in accordance with the policy of the Geneva County Jail regarding any claim in his Complaint. (Rowe Aff., ¶ 16.)

---

[4]Stories on what caused the fight vary. According to Payne, the Plaintiff started the fight by verbally instigating Payne. (Ward Dep. 37:8-12.) Other witnesses stated that Payne attacked the Plaintiff over a dispute about Inmate Request forms (Exhibit H, Statement of Robert Owen, "Owen Statement" at p. 1; Exhibit I, Statement of Richard Bove, "Bove Statement" at p. 1.) Some witnesses saw a fight between only Payne and the Plaintiff, (Ex. H at p. 1; Ex. I at p. 1; Exhibit J, Statement of Blake Enfinger, "Enfinger Statement" at ¶ 1); and another saw three inmates assaulting the Plaintiff. (Exhibit K, Affidavit of Jowel S. Nunn, "Nunn Aff.," at ¶ 2.)

## **STANDARD OF REVIEW**

Pursuant to this Court's Order dated September 10, 2007, the only remaining claim against the Commission is a claim under the Eighth Amendment brought pursuant to 42 U.S.C. § 1983 for failure to build and maintain a jail, coupled with deliberate indifference to a substantial risk of serious harm to the Plaintiff.

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.1[5]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Mass. School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

---

[5] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

At all times relevant to the alleged assault that is the subject of this Plaintiff's Complaint, the Commission adequately funded the maintenance and upkeep of the Geneva County Jail, and the Geneva County Jail was, in fact, in appropriate condition for the housing of inmates.

Sheriff Ward supervised the jail employees and stayed abreast of the jail's condition and would have notified the Commission if the jail had inadequate facilities or needed personnel, particularly if said need was of a constitutional dimension. Such notification was unnecessary because the jail facilities were adequate for safely holding inmates. The Commission denies that it committed any constitutional violations against the Plaintiff, based in law and fact, and, that if the Plaintiff did suffer any constitutional injury, it contends that it is entitled to qualified immunity. Therefore, the Commission submits this Motion for Summary Judgment.

## **ARGUMENT**

**I.      THERE IS NO EVIDENCE SHOWING THAT THE COMMISSION WAS RESPONSIBLE FOR *ANY* OF THE ALLEGED VIOLATIONS OF THE PLAINTIFF'S RIGHTS AS ALLEGED IN HIS COMPLAINT.**

As set forth above, the Plaintiff has alleged violations of his federal constitutional rights. However, the Plaintiff cannot show that the Commission was responsible for any of these alleged violations. The Commission's only duty with regard to the Jail is to build, maintain, and fund the jail, and the *undisputed* evidence shows that the Commission fulfilled this duty.

**A.      THE COMMISSION'S ONLY DUTY WITH REGARD TO THE JAIL IS TO BUILD, MAINTAIN, AND FUND THE JAIL.**

Both federal and state law is clear that the only duty that an Alabama county commission has with regard to its county jail is to build, maintain, and fund the jail. See

9

Marsh v. Butler County, 268 F.3d 1014, 1026 (11th Cir. 2001) (holding that Alabama law assigns counties a 'limited role in *building and funding* the jails.")  (emphasis added); see also ALA. CODE § 11-14-10 (1975) ("Each county within the state shall be required to maintain a jail within their county."); King v. Colbert County, 620 So. 2d 623, 625 (Ala. 1993); Stark v. Madison County, 678 So. 2d 787, 788 (Ala. Civ. App. 1996).  The word "maintain" has been interpreted to require a county "keep a jail and all equipment therein in a state of repair and to preserve it from failure or decline."  Keeton v. Fayette County, 558 So. 2d 884, 886 (Ala. 1989); accord King, 620 So. 2d at 625.

The Eleventh Circuit in Turquitt v. Jefferson County, Ala., sitting en banc, analyzed Alabama law with respect to whether Alabama counties possess any authority over the *operation of county jails or the supervision of jail employees or inmates*.  137 F.3d 1285, 1288-91 (11th Cir. 1998) (en banc).  In Turquitt the Eleventh Circuit found as follows:

> A thorough analysis of the Code reveals that no statute authorizes counties to supervise inmates in the county jails; instead, authority over inmates is expressly delegated to Alabama sheriffs.  Moreover, in operating the jails, sheriffs are subject to control by state executive agencies, not by counties.
>
> Under the Alabama Code, the sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself.  The Code bestows upon the sheriff "the legal custody and charge of the jail in his county and all prisoners committed thereto."  Ala. Code § 14-6-1 (1995).  The Alabama Supreme Court has held that § 14-6-1 demonstrates that "the sheriff's authority over the jail is totally independent of the [county commission]."  King v. Colbert County, 620 So. 2d 623, 625 (Ala. 1993). The sheriff appoints, directs, and controls the deputies and jailers who work at the jail.  Ala. Code § 14-6-105.  The County has no authority to manage the sheriff's employees.  See Lockridge v. Etowah County Comm'n, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984); see also Terry v. Cook, 866 F.2d 373, 379 (11th Cir. 1989) (finding that Alabama county commissioners have no authority to hire or fire deputies or jailers). . . .

10

> We recognize that Alabama counties possess some duties with respect to county jails. However, none of these duties relates to the daily operation of the jails or to the supervision of inmates.

Id. at 1289.

Thus, under Alabama law, the Commission has no duty in regard to the operating, administering, or the overseeing of the Jail. The Commission has no duty, and can have no duty, with regard to the day-to-day operations of the jail. See Turquitt, 137 F.3d at 1288-1291; King, 620 So. 2d at 625 (holding county commission has no control over jail operations). The Commission has no authority to promulgate policies for the Jail. See Lockridge v. Etowah County Comm'n, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984) (holding that the county commission has no authority "to promulgate work rules for the employees of the sheriff's office, especially the sheriff's deputies"). Further, the Commission has no duty or authority to make decisions regarding hiring, training, supervision, or firing employees for the Jail. See Dowdell v. Chapman, 930 F. Supp. 533, 549 (M.D. Ala. 1996) (holding that an Alabama county has no duty to train or supervise sheriffs or deputy sheriffs). Terry, 866 F.2d at 379 (finding "no authority in Alabama law granting the county commission the authority to hire and fire deputy sheriffs"); Stark v. Madison County, 678 So. 2d 787, 788 (Ala. Civ. App. 1996) (finding that an Alabama county has no responsibility for actions of the sheriff); Raspberry v. Johnson, 88 F. Supp. 2d 1319, 1325-26 (M.D. Ala. 2000) ("Under Alabama law, county commissioners have no power over the sheriff in matters related to law enforcement. Furthermore, county commissioners have "no authority to manage the sheriff's employees.") (citations omitted).

Therefore, any claims based on the alleged inadequacies in the policies and procedures of the jail, alleged inadequacies in hiring, training, supervision, and firing practices, and alleged inadequacies in the operation of the jail in general are due to be dismissed as a matter of law as to the Commission because, under federal and state law, it has no duty or authority with regard to these matters.

**B.    THE UNDISPUTED EVIDENCE SHOWS THAT THE COMMISSION FULFILLED ITS TWO DUTIES: TO FUND AND BUILD AND MAINTAIN THE JAIL.**

As set forth above, the Commission's only duties with regard to the jail are to fund the jail and build and maintain the jail. The undisputed evidence shows that the Commission provided Sheriff Ward with adequate funding for all aspects of the jail. Even Sheriff Ward testified that the Commission provided adequate funding for hiring, training, maintenance and repairs, and space in which to house inmates. The evidence shows that the Commission was prepared to fund whatever needs Sheriff Ward may have for the jail, and that the Commission had always done so in the past. The evidence also shows that the jail was in a state of good repair and that there was adequate space in which to house inmates.

The Court, in Williams v. Limestone County, et al., 2006 WL 2805636 (11th Cir. 2006), held that where the County did provide adequate funding for medical care at whatever level the jail required, where the Plaintiff failed to produce evidence that the Commission did not pay whatever amounts were requested for such care, and where there was no showing of how the County should have been aware that the nurse was not competent, there was no basis for holding the County liable under federal or state law for the Plaintiff's allegedly improper medical care. Similarly in the instant case, because it is

12

clear from the *undisputed* evidence that the Commission fulfilled its each and every duty with regard to the jail, it cannot be held responsible for any alleged violations of the Plaintiff's rights.

**II.    THE PLAINTIFF CANNOT ESTABLISH LIABILITY PURSUANT TO 42 U.S.C. § 1983.**

To impose § 1983 liability on the Commission, the Plaintiff must demonstrate that the Commission had a custom or policy that constituted deliberate indifference which caused a violation to his constitutional rights. McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). Here, the Plaintiff cannot demonstrate any custom or policy that led to a constitutional violation. Instead, the evidence demonstrates that the Commission's policy has been to be very responsive to the needs of the jail and its inmates. Thus, because the Plaintiff cannot demonstrate any custom or policy demonstrating the Commission's indifference, this Court should dismiss his claims against the Commission.

The Plaintiff's claims are also due to be dismissed because the Commission has adequately funded and maintained the jail. In Alabama, the duties of a county commission are "limited to funding the operation of the jail and to providing facilities to house the jail." Turquitt v. Jefferson County, Ala., 137 F.3d 1285, 1289 (11th Cir. 1998). The county commission is thus charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners. Ala. Code §§ 11-14-10, 11-14-13 (1989). In Alabama, the term "maintain" has been interpreted "to require the county commission to keep a jail and all equipment therein in a state of repair and to preserve it from failure or decline." Keeton v. Fayette County, 558 So. 2d 884, 886 (Ala. 1989).

Here, the evidence demonstrates that the Commission has adequately funded the needs of the jail. For example, in 2004, when the need for more space occurred due to the sudden rise in methamphetamine related arrests, the Commission funded expansion of the jail. As a result, within two years, a jail annex was completed that held an additional fifty-two beds. Additionally, in 2004, to deal with the mold problem, the Commission funded sandblasting and repainting walls, installation of an improved air conditioning system, and moving the inmates to other facilities to ensure their safety. Thus, because the Commission had adequately funded the jail, this Court should dismiss the Plaintiff's claims against the Commission.

Should this Court fail to dismiss the claims for the Plaintiff's failure to demonstrate any illegal policy or custom or lack in funding by the Commission, each of the Plaintiff's causes of action is due to be dismissed individually. The Plaintiff has pled the following three causes of action against the Commission: (1) conditions of confinement, (2) failure to provide adequate medical care, and (3) jail overcrowding was the cause of his injuries. (Order on Motion to Dismiss p. 2.)

This Court should dismiss the Plaintiff's claim for failure to provide adequate medical care. Deliberate indifference to an inmate's serious medical needs is a constitutional violation. McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999). However, the Plaintiff cannot show deliberate indifference. Rather, the evidence shows that the Plaintiff's medical care was quite good. For example, on the day the Plaintiff had a high fever, he was taken to the emergency room. When diagnosed with staph, special arrangements were made for the Plaintiff to receive hospital treatment. When the

Plaintiff was allegedly beaten by Payne, he was rushed to the emergency room and when he returned, was given a two-person cell where he regularly received his medications.

This Court should dismiss the Plaintiff's claims for overcrowding and conditions of confinement. To support his claims, the Plaintiff states that he had to sleep on the floor, and his cell had little room for walking around. The mere fact that a mattress is on the floor is not a per se constitutional violation. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir 1985). Evidence also shows that the jail, built with forty-two beds, housed forty-nine inmates while the Plaintiff was an inmate. However, even a jail at double capacity is not a constitutional violation absent "deprivation of essential food, medical care, or sanitation." Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981). Here, the Plaintiff does not claim he was inadequately fed; the Plaintiff received very good medical care; the plumbing, electrical, water supply, and air conditioning had all been recently upgraded; and the jail was not near double capacity.

There is no evidence of a policy or custom established by the Commission that could have contributed to the alleged violation. "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citations omitted). The Plaintiff cannot produce evidence of any custom or policy established by the Commission which could cause it to be liable for his alleged injury.[6]

---

[6] Sheriff Ward and his employees are not policymakers of the Commission for purposes of holding the Commission liable pursuant to a custom or policy. See McMillian v. Monroe County, Ala., 520 U.S. 781, 788 (1997) (holding that an Alabama Sheriff "represents the State of Alabama and is therefore not a county policymaker.").

15

> [I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decision-maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403-04 (U.S. 1997) (citations omitted); see also Colle v. Brazos County, 981 F.2d 237, 245 (5th Cir. 1993) ("A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."). The Plaintiff cannot show any custom or policy of the Commission that in any way led to the alleged constitutional deprivation, or made such a deprivation more likely.

Further, in order to hold the Commission liable for constitutional deprivations under § 1983, the Plaintiff must not only identify conduct properly attributable to the Commission, but he must also show, through the Commission's deliberate conduct, its policy was the "moving force" behind the violation. See McElligott v. Foley, 182 F.3d 1248, 1259 (11th Cir. 1999) (affirming summary judgment in favor of county on the basis that the plaintiff did not show "that a county policy or custom was the 'moving force' that caused the alleged constitutional violations."); Brown, 520 U.S. at 404; see also Polk County v. Dodson, 454 U.S. 312, 326 (1981). Only "when execution of a government's policy or custom" is responsible for "inflict[ing] the injury," and thus is "the moving force of the constitutional violation" is the governmental entity liable. Monell, 436 U.S. at 694; see also Farred v. Hicks, 915 F.2d 1530, 1532-33 (11th Cir. 1990); Anderson v. City of Atlanta, 778 F.2d 678, 685 (11th Cir. 1985). A plaintiff must show that the

16

municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the alleged injury. Brown, 520 U.S. at 404. "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, 981 F.2d 237, 245 (5th Cir. 1993). An allegation that a plaintiff suffered a deprivation of federal rights at the hands of a sheriff's employee will not alone permit an inference of county culpability and causation; the plaintiff will simply have shown that the employee acted culpably. Id. at 406-07.

Here, the Plaintiff does not allege that his injuries were the result of lack of funding and maintenance, and he has not presented any evidence of any policy or custom of the Commission that led to the allegedly wrongful acts. The Supreme Court has made it clear that one cannot infer control based solely on funding. See McMillian v. Monroe County, 520 U.S. 781, 793 (1997) ("But at most, this discretion [with respect to funding] would allow [Geneva] County to exert an attenuated and indirect influence over the Sheriff's operations.").

Because there is no evidence that the Commission enacted a policy or custom that was the "moving force" behind the Plaintiff's alleged injury, the Plaintiff's claims against the Commission are due to be dismissed as a matter of law.

The United States Supreme Court has established that more than mere negligence is required for a showing of a denial of due process under the Eighth Amendment's prohibition of cruel and unusual punishment. Deliberate indifference means "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner." Farmer v. Brennan, 511 U.S. 825, 836, 114 S. Ct. 1970, 1978 (1994) The

17

Supreme Court in Farmer relied upon Estelle v. Gamble, 429 U.S. 97 (1976), which stated that deliberate indifference "describes a state of mind more blameworthy than negligence." Id. at 104. Deliberate indifference is only shown when two conditions are met: (1) the inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm" and (2) "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 834 and 837.

Even assuming, *arguendo*, that the Plaintiff was incarcerated under conditions posing a substantial risk of serious harm, there is no evidence that the Commission was aware of these facts. Further, the evidence shows that the Commission was not aware of any aspect of the Plaintiff's incarceration. Therefore, there can be no evidence showing that the Commission knew that the Plaintiff was subject to any threatened harm. Because the Commission's duties are limited to maintaining and funding the jail and do not include any operational duties, the Commission would have no reason to know of the Plaintiff's specific situation in the jail, or even whether he was, in fact, housed at the jail. The Commission had no knowledge of any significant history of inmate violence at the jail or any instances where inmates were exposed to unnecessary risks of staph infections.

The evidence is clear that the Commission was not deliberately indifferent with regard to carrying out the duties that it had. The *undisputed* evidence shows that the Commission was adequately funding all aspects of the operation of the jail during the relevant time period. The *undisputed* evidence also shows that the Commission had no knowledge of any deficiency in the jail with regard to funding, maintenance and repair,

space for inmates, hiring, or training. The undisputed evidence also shows that when there was a need in any of these areas, Sheriff Ward made the Commission aware of the need, and the Commission made funds available to remedy the problem.

As this Court has previously noted, the Plaintiff made the following factual allegations to support his claim: (1) Rudd became infected with a staph infection due to unkempt and foul jail conditions, (2) Rudd and other inmates repeatedly requested that Rudd be transferred to a different cell block because of his infection, (3) when he was not moved, Rudd was physically and severely assaulted, and (4) the beating caused Rudd to incur staph infection. However, the Plaintiff lacks evidence to support his claims.

The Plaintiff lacks evidence to show that his staph was due to jail conditions. While the Plaintiff and another witness state that the jail conditions were foul, (Nunn Aff. at p. 1), their statements are mere conclusions, which are legally insufficient to defeat a summary judgment motion. Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). Further, the Plaintiff cannot demonstrate that the jail conditions were the actual cause of his staph. The Plaintiff was an inmate for only two days before he was diagnosed with staph. The Plaintiff testified that an emergency room doctor told him that the jail caused his staph. (Rudd Dep. 54:19-55:5) However, the Plaintiff's testimony of the doctor's statement is hearsay and not proper evidence by motion for summary judgment standards.

Because the undisputed evidence shows that the Commission was not aware of any deficiency which could present any risk of harm, it could not have been deliberately indifferent in this case.

19

## CONCLUSION

Based upon the foregoing, no genuine issue of any material fact exists as to Plaintiff's claims against the Commission, and summary judgment is due to be granted as a matter of law as to all of the Plaintiff's claims.

Respectfully submitted this 9th day of September, 2008.

> s/C. Richard Hill, Jr.
> KENDRICK E. WEBB (WEB022)
> C. RICHARD HILL, JR. (HIL045)
> JOSEPH L. HUBBARD, JR. (HUB015)
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> (334) 262-1850 - Telephone
> (334) 262-1889 - FAX
> E-mail:  rhill@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **J. E. Sawyer, Jr., Esquire.**

> s/C. Richard Hill,Jr.
> OF COUNSEL