**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DENNIS RUDD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Civil Action No. 1:06-cv-233-WKW** |
| | ) |
| **GENEVA COUNTY COMMISSION** | ) |
| **and SHERIFF GREG WARD,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM BRIEF IN SUPPORT OF
## SHERIFF WARD'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Greg Ward, Geneva County Sheriff, sued in his individual capacity, and submits this Memorandum Brief in support of his Motion for Summary Judgment filed contemporaneously herewith.

## INTRODUCTION

Plaintiff Dennis Rudd filed suit against Defendants Sheriff Greg Ward and the Geneva County Commission for injuries sustained due to a beating from a fellow inmate. On September 10, 2007, this Court's Order dismissed Plaintiff's claims under the Fourth, Fifth, Fourteenth, and Seventeenth Amendments and claims for injunctive relief against Sheriff Ward in his official capacity. Plaintiff's Eighth Amendment claims against the Commission and Sheriff Ward in his individual capacity remain.

## STATEMENT OF FACTS

Sheriff Ward adopts and incorporates by reference the statement of facts set forth in the County's Brief in Support of its Motion for Summary Judgment as if it were set forth here in its entirety.

**STANDARD OF REVIEW**

Sheriff Ward adopts and incorporates by reference the standard of review set forth in the County's Brief in Support of its Motion for Summary Judgment as if it were set forth here in its entirety.

**ARGUMENT**

**I.    PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF PROOF UNDER RULE 56(C), FED. R. CIV. P.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   The party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Id. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. As the Celotex Court observed:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who *fails to make a showing sufficient to establish the existence of an element essential to that party's case*, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Id. at 322-23 (emphasis added).

As this Court observed in its September 10, 2007, Order, the Plaintiff made the following factual allegations to support his claim: (1) Plaintiff became infected with a staph infection due to unkempt and foul jail conditions, (2) Plaintiff and other inmates repeatedly requested that Plaintiff's transfer to a different cell block because of his infection, (3) when he was not moved, Plaintiff was assaulted, and (4) the beating caused Plaintiff to incur staph infection. (Doc. 10, pp. 1-2.) However, the Plaintiff has presented no evidence to support these allegations.

Plaintiff lacks evidence showing that his staph infection was due to any jail conditions. The only evidence that the Plaintiff has produced regarding the cleanliness of the jail is conclusory testimony[1] without any factual basis from another inmate that the Plaintiff contracted staph from unclean jail conditions.[2] Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) ("'For factual issues to be considered genuine, they must have a real basis in the record.' Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citations omitted). For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion. Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989)").

Additionally, Plaintiff has not demonstrated that the jail conditions were the *actual* cause of his staph infection. Plaintiff was an inmate for only two days before he was diagnosed with staph. Plaintiff testified that an emergency room doctor told him that the jail caused his staph infection. (Rudd Dep. 54:19-55:5.) However, Plaintiff's testimony of the doctor's statement is hearsay and not proper evidence by motion for summary judgment standards.    Macuba v.

---

[1] Plaintiff has not produced evidence that would support the conclusion that the jail was unclean.
[2] Nowhere in his affidavit does Nunn indicate the basis for his medical conclusion that Plaintiff's staph infection was a result of jail conditions, nor does he otherwise describe the extent of his medical expertise.

Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (Inadmissible hearsay "cannot be considered on a motion for summary judgment").

Further, Plaintiff has not demonstrated that he and other inmates repeatedly requested Plaintiff's transfer to a different cell block because of his staph infection.[3]  First, there is no evidence that any other inmates requested Plaintiff's transfer.  Plaintiff claims that Payne drafted a document requesting his transfer, yet has failed to produce it.  Second, Plaintiff has failed to produce any evidence, other than his own self-serving testimony, that indicates that he requested a transfer.  If Plaintiff had, in fact, requested such a transfer, a copy of that request would be in Plaintiff's Inmate File, but no such copy exists.

Plaintiff's unsubstantiated allegation that, when he was not moved, he was assaulted, does not support his claim.  While the fact that Plaintiff was severely beaten is undisputed, the issue is whether Sheriff Ward either was should have been aware that Plaintiff was in danger. Marsh v. Butler County, Ala., 268 F.3d 1014, 1027 (11th Cir 2001).  As noted in the prior paragraph, Plaintiff has failed to demonstrate that Sheriff Ward was on notice.

Plaintiff cannot demonstrate that his staph was caused by the assault.  On January 10, 2005, Plaintiff was released from the jail for treatment of his staph infection.  On February 25, 2005, Plaintiff was assaulted and but not diagnosed with staph at that time.  Because the staph was prior to the assault, the assault could not have caused Plaintiff's staph.  This obvious factual error calls into question the veracity and reliability of Plaintiff's version of the facts.  Nor can Plaintiff demonstrate that the assault caused his Post Traumatic Stress Disorder (PTSD) and schizophrenia.  There is no evidence to demonstrate that Plaintiff has schizophrenia let alone that the assault was the cause other than Plaintiff's own declaration.  (Rudd Dep. 69:7-21.)  Further,

---

[3] Plaintiff would not have had a staff infection at this point in time because these events occurred on February 24-25, 2005.  Plaintiff was released from the jail for treatment of his staph infection on January 10, 2005.

the evidence demonstrates that Plaintiff had PTSD prior to the assault.  Plaintiff presents

evidence from a medical doctor that his PTSD was caused by the assault.  (Exhibit N, Letter

received from Dr. J. Strunk demonstrating that Plaintiff had PTSD prior to the assault.)

However, Plaintiff's medical history demonstrates he was positive for PTSD prior to the assault.

(Exhibit M, Rudd Medical History, dated February 24, 2005.)  Additionally, Plaintiff's medical

history at the time of both of his bookings in the jail demonstrates he suffered from mental

illness prior to his incarceration.  (Exhibit E, Inmate Booking Sheet dated Jan. 6, 2005 "Inmate

Booking Sheet" at p. 1 ; Exhibit G, Geneva County Booking Sheet dated February 10, 2005.)

## II.    SHERIFF WARD IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NOT ESTABLISHED A VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS.

To the extent that this Court has construed against Sheriff Ward deliberate indifference

claims under the Eighth Amendment for (1) failure to provide adequate medical care, (2)

conditions of confinement, and (3) failure to protect, the Plaintiff has not presented any evidence

to support those claims.

### A.    Plaintiff has presented no evidence to support any Eighth Amendment claim.

The United States Supreme Court has stated that more than mere negligence is required

for a showing of cruel and unusual punishment.  Deliberate indifference means "acting or failing

to act with deliberate indifference to a substantial risk of serious harm to a prisoner."  Farmer v.

Brennan, 511 U.S. 825, 836, 114 S. Ct. 1970, 1978 (1994) (sexual assault upon pre-operative

transsexual placed in general prison population).  There the Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for
> denying an inmate humane conditions of confinement unless the official knows of
> and disregards an excessive risk to inmate health or safety; the official must both
> be aware of facts from which the inference could be drawn that a substantial risk
> of serious harm exists, and he must also draw the inference. . . .  But an official's
> failure to alleviate a significant risk that he should have perceived but did not,

while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

The Supreme Court in Farmer relied upon Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976), which stated that deliberate indifference "describes a state of mind more blameworthy than negligence." Id. at 104. But for there to be deliberate indifference, the conduct need not be malicious or sadistic as in excessive force claims. "[D]eliberate indifference [lies] somewhere between the poles of negligence at one end and purpose or knowledge at the other, [so] the Courts of Appeals have routinely equated deliberate indifference with recklessness." Farmer, supra, at 836.

The deliberate indifference analysis has two components: an objective one concerning the seriousness of the deprivation and a subjective one relating to the culpability of the prison official's state of mind. Id. at 834. Thus, for a plaintiff to survive a motion for summary judgment, he must show that the alleged deprivation of rights – in objective terms – "posed a substantial risk of serious harm." Id. Second, he must show that the defendant acted with a sufficiently culpable state of mind. Id. Here, the Plaintiff has produced no evidence that Sheriff Ward 1) subjectively knew his action created a substantial risk of serious harm to Plaintiff, *and* 2) that Sheriff Ward deliberately disregarded an objective risk of serious harm.

      **1.**      **Plaintiff has not shown that Sheriff Ward was deliberately indifferent to any reasonably serious medical condition that Plaintiff made known to him.**

Plaintiff has offered no facts in his Complaint, nor has he produced any substantiating evidence, to support a claim against Sheriff Ward for his failure to provide Plaintiff proper medical care. In order to prevail under 42 U.S.C. § 1983 on this claim, Plaintiff must demonstrate that the Defendants were deliberately indifferent to a "serious" medical condition,

such that the Defendants' conduct constitutes an Eighth Amendment violation.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'") (citing Estelle v. Gamble, 429 U.S. 97, 103-104 (1976)).

> In Estelle, the Supreme Court stated:
>
> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  *It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment*.

429 U.S. at 105-06 (emphasis added).  See also, Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown.  Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, Plaintiff has not shown that he had a serious medical condition.  In fact, Plaintiff never once complained to Sheriff Ward about his medical condition, specifically that he had a staph infection.  Plaintiff never filed an inmate request form seeking medical treatment of any kind, nor did he file a grievance form complaining about any purported denial of medical care.  In fact, the record reflects that Plaintiff actually received treatment for his staph infection while in the Geneva County Jail.  While incarcerated, Plaintiff was taken to the emergency room for a fever, and he was diagnosed and treated for a staph infection, which he

contracted prior to entering the jail.  Plaintiff was also released on bond to go to the hospital, where he was treated for his staph infection for a month.  Further, Plaintiff was treated at a hospital for two weeks after he got in a fight with another inmate.  Had Plaintiff actually requested necessary medical care in addition to the treatment he received, it would have been provided to him.

Although this particular treatment may not have been the exact treatment Plaintiff would have liked, it was adequate treatment.  An inmate does not have a right to a *specific* kind of treatment.  City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*.") (emphasis added). Additionally, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated Plaintiff.  See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Further, Sheriff Ward does not have any kind of medical education, training, or experience.  He must rely upon the professional judgment of medical professionals to provide care to the inmates.  In Williams v. Limestone County, 198 Fed. App'x 893 (11th Cir. 2006), the

Eleventh Circuit had addressed in an unpublished opinion the issue of whether an inmate may

maintain a medical claim under the auspices of § 1983 against prison officials with no medical

background.  In <u>Williams</u>, the Eleventh Circuit held that a Sheriff was not liable for failure to

train his employees in emergency medical procedures.  In so holding, the Court noted:

> [W]e cannot say, on this record, that "the need for more or different training [was]
> obvious," such that by failing to ensure jail personnel were trained in emergency
> medical procedures, Sheriff Blakely disregarded a substantial risk that the jail
> staff would be deliberately indifferent to inmates' medical needs ….
>
> [T]here is no indication from the record that Sheriff Blakely had notice his
> policies, training procedures, or supervision were "likely to result in the violation
> of a constitutional right." ….
>
> [S]upervisory officials are entitled to rely on medical judgments made by medical
> professionals responsible for prisoner care.  <u>See, e.g.</u>, <u>Durmer v. O'Carroll</u>, 991
> F.2d 64, 69 (3d Cir.1993); <u>White v. Farrier</u>, 849 F.2d 322, 327 (8th Cir.1988).  In
> this case, Sheriff Blakely promulgated general procedures for dealing with
> emergency situations, which procedures relied primarily on the medical expertise
> Naphcare was obligated by contract to provide ….  "[D]eliberate indifference is a
> stringent standard of fault, requiring proof that [the] actor disregarded a known or
> obvious consequence of his action."  <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S.
> 397, 117 S. Ct. 1382, 1391, [] (1997).  <u>See also</u> <u>Adams v. Poag</u>, 61 F.3d 1537,
> 1543 (11th Cir. 1995).  Williams [the plaintiff], as the district court concluded,
> thus failed to meet his burden on summary judgment of establishing that Sheriff
> Blakely's failure to train jail personnel amounted to deliberate indifference to
> Williams' serious medical condition.

198 Fed. App'x at 897-898.

    In the instant case, the evidence shows that Plaintiff never complained to Sheriff Ward

about his medical condition or medical treatment, nor did he make the Sheriff aware that he had

a serious condition that needed treatment.  The record further demonstrates that Plaintiff received

immediate and abundant treatment for his medical conditions.  Sheriff Ward, who is not a trained

and licensed medical provider, is in no way responsible for second-guessing the judgments of

medical professionals and cannot be held responsible for delivering treatment for a condition of

which he is not aware and for which the medical professional has provided diagnosis and

treatment.   Therefore, Plaintiff has failed to produce any evidence to support his claim that Sheriff Ward denied him proper medical treatment, and Sheriff Ward is entitled to judgment as a matter of law as to that claim.

> **2.    Plaintiff has not shown that Sheriff Ward imposed any inhumane conditions of confinement or treatment upon Plaintiff during his confinement.**

Plaintiff has offered no evidence to support the bare allegations in his Complaint to support a claim against Defendants for subjecting Plaintiff to inhumane conditions and treatment in violation of the Fourteenth Amendment.   The Constitution does not mandate comfortable prisons. As the Supreme Court recognized in Bell v. Wolfish, 441 U.S. 520, 537 (U.S. 1979):

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however … And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

441 U.S. at 537.  See also, Rhodes v. Chapman, 452 U.S. 337, 349 (1981).

Jail officials must provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, and medical care.  Hudson v. Palmer, 468 U.S. 517, 526-527 (1984).  "The Constitution does not require that prisoners be provided any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration."  Newman v. Alabama, 559 F.2d 283, 291 (5th Cir. 1977), rev'd in part on other grounds, 438 U.S. 781 (1978).[4]   Only where the conditions complained of result in "unquestioned and serious deprivation of basic human needs" do they rise to a constitutional violation.  Rhodes, 452 U.S. at 347.  A claim is stated only where the conditions of confinement (including failure to protect claims) pose a serious risk to the health or safety of an inmate and

---

[4] See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (decisions of the Fifth Circuit handed down before close of business on September 30, 1981 are binding precedent on the Eleventh Circuit).

the defendant official is deliberately indifferent to that risk. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).

To establish a violation of his right to be free from inhumane conditions or treatment, Plaintiff is required to show that Defendants "intentionally imposed the restriction for a punitive purpose." <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1291-92 (11th Cir. 1998) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 (1979)). To establish that a confinement restriction is punitive in nature, Plaintiff must show that the restriction "'is not reasonably related to a legitimate goal -- if it is arbitrary or purposeless,'" in which case, "'a court may infer that the purpose of the government action is punishment.'" <u>Wilson</u>, 163 F.3d at 1292 (quoting <u>Lynch v. Baxley</u>, 744 F.2d 1452, 1463 (11th Cir. 1984)).

Here, the Plaintiff appears to base his conditions of confinement claim on the allegations that 1) the jail was unclean, and 2) the jail was overcrowded. He has produced no evidence that the jail was unclean, other than a baseless conclusion from a fellow inmate that Plaintiff's staph infection was a result of jail conditions. These baseless allegations are patently insufficient to carry the Plaintiff's burden on his conditions of confinement claim. <u>Ellis</u>, 432 F.3d at 1326; <u>Mize</u>, 93 F.3d at 742; <u>Oliver</u>, 863 F.2d at 1563. However, even if these baseless allegations were sufficient to establish an evidentiary foundation, they would not constitute a violation of the Eighth Amendment for Plaintiff's deliberate indifference claim. Indeed, the undisputed evidence to the contrary indicates that upgrades were made to the plumbing, electrical, water supply, and air conditioning in the jail and, the cells were been maintained though cleaning and repainting. Additionally, at all times relevant to Plaintiff's claims, it was the policy of the Geneva County Sheriff's Office that persons incarcerated in the Geneva County Jail be housed in humane and sanitary conditions. In fact, inmates are provided cleaning materials each day so they may

sanitize the living areas of their cells, under the supervision of a member of the jail staff, and all jail common areas are cleaned by trusties every morning.

As the Supreme Court acknowledged in Bell v. Wolfish, supra, Plaintiff is not entitled to "live as comfortably as possible." 441 U.S. at 537. Here, Plaintiff has alleged no facts in his Complaint, nor has he produced any evidence that indicates Sheriff Ward deprived Plaintiff of adequate food, clothing, shelter, or medical care. Even if jail conditions somehow contributed to Plaintiff's staph infection, he received adequate treatment for the infection, and the mere contraction of a staph infection certainly does not amount to an "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347. Further, Plaintiff has produced no evidence indicating that Sheriff Ward had knowledge that the conditions of the jail would result in Plaintiff's staph infection, nor does Plaintiff indicate that there was an outbreak of staph infection at the jail due to the jail conditions.

Additionally, Plaintiff has produced no evidence that the jail was overcrowded, other than his allegation that he had to sleep on a bunk on the floor. This fact, alone, cannot constitute an Eighth Amendment violation. Plaintiff does not contend that he suffered any harm from sleeping on a bunk on the floor, nor does he otherwise produce evidence indicating how the location of his bunk amounts to the deprivation of his Eighth Amendment rights. Indeed, the undisputed evidence to the contrary indicates that Sheriff Ward urged the County to build a new annex to the jail to alleviate any overcrowding, and that annex was completed at all times relevant to Plaintiff's claims. Sleeping in a bunk on the floor certainly does not pose a serious risk of imminent harm to an inmate. Farmer v. Brennan, 511 U.S. at 837.

Because Plaintiff has failed to produce any evidence to support his claim that Sheriff Ward created conditions of confinement that violated his Eighth Amendment right to be free

from cruel and unusual punishment, Sheriff Ward is entitled to judgment as a matter of law as to that claim.

> ### 3.    Plaintiff failed to produce any evidence that Sheriff Ward had subjective knowledge that Plaintiff was going to suffer a substantial risk of harm, or that Sheriff Ward intentionally disregarded that risk.

Plaintiff's claim for failure to protect appears to be based on the factual allegation that Plaintiff's assailants drafted and signed a letter to Sheriff Ward, that Plaintiff apparently delivered to the Sheriff, stating that they would assault Plaintiff if Sheriff Ward did not transfer the Plaintiff to a different cell. Although this factual allegation is contested by Sheriff Ward, it could not substantiate a claim against him under the Eighth Amendment, even if it were deemed true.

In Farmer, the Supreme Court addressed a failure to protect claim by an inmate who was physically assaulted and raped. There, prison officials made a *deliberate decision* to place a vulnerable person, a pre-operative transsexual, in a general population with a history of violent behaviors and predatory sexual inclinations. There, the Court explained the determination as to what level of risk taken by an official is adequate to prove the requisite recklessness.

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence … and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Cf. LaFave & Scott § 3.7, p. 335 ("[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of").

Farmer, 511 U.S. at 842. The Court further observed:

> While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, … he would not escape liability if the evidence showed that he merely *refused to verify underlying facts* that he strongly suspected to be true, or *declined to confirm inferences of risk* that he strongly suspected to exist (as when a prison official is aware of a high probability of facts

13

indicating that one prisoner has planned an attack on another but resists opportunities to obtain final confirmation ….).

Farmer, 511 U.S. at 842 n.8 (emphasis added).

The Court's analysis in Farmer of the obviousness of a risk for purposes of a failure to protect claim came in the context of a deliberate decision by prison officials to place a vulnerable pre-operative transsexual, who had taken and was taking estrogen therapy and who had breast implants and clear feminine characteristics, in the general population of USP-Terre Haute, "a violent institution with a history of sexual assault, stabbings, etc." Id. at 849. In such a situation, the question of whether the official made a reckless decision or not is for a jury.

In Purcell v. Toombs County, GA, the Eleventh Circuit applied the Supreme Court's standard for deliberate indifference to an inmate's failure to protect claim. 400 F.3d 1313 (11th Cir. 2005). There, the plaintiff produced evidence demonstrating that approximately three inmate-on-inmate fights had occurred in the jail, that jail staff allowed inmates to keep money in their cells and play cards and gamble, and that the physical layout of the jail hindered guards from preventing inmate-on-inmate attacks. Id. at 1320. The Eleventh Circuit concluded, however, that this evidence, even when viewed in a light most favorable to the plaintiff, was insufficient to establish an Eighth Amendment violation. In so holding, the Court observed:

> We accept that an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; "*occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment*, [but] confinement in a prison where violence and terror reign is actionable. A prisoner has a right, secured by the eighth ... amendment[ ], to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates[.]" Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973) (citation omitted). We, however, see insufficient evidence in the record to show that inmates in the Toombs County Jail were exposed to something even approaching the "constant threat of violence." See id.; see also Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986). On substantial risk of serious harm, "[t]his objective standard 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ...," ' but must be balanced against competing penological goals."

LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993) (citations omitted). And we stress that a "*prison custodian is not the guarantor of a prisoner's safety.*" Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990).

Id. at 1320-21 (emphasis added).  Here, Plaintiff asks this Court to hold Sheriff Ward liable for his assault, despite any evidence that there was a "constant threat of violence" in the jail generally, or towards the Plaintiff.  To the extent that Plaintiff's self-serving testimony may be believed, Sheriff Ward would have only had notice of a threat of violence towards the Plaintiff on one isolated occasion, hours before the assault occurred.

Here, the Plaintiff contends Sheriff Ward received notice of the physical threat to his safety sometime during the day on February 24, 2005, the *same day the altercation took place*. Plaintiff does not contend that Sheriff Ward refused to verify Plaintiff's contention that he would be assaulted if he were not transferred, nor does he contend that Sheriff Ward declined to confirm the risk to Plaintiff's safety.  Plaintiff merely claims that he requested an immediate transfer from Sheriff Ward, and the Sheriff declined to transfer him at that time.  Plaintiff also contends that he provided Sheriff Ward with a letter from Payne and two other inmates, in which they purportedly describe their intention to assault Plaintiff if he is not moved.  The Plaintiff was assaulted later that day.

Plaintiff asks this Court to conclude, based on his self-serving allegations, which have been refuted by other testimony and have not otherwise been corroborated, that Sheriff Ward should have immediately transferred Plaintiff.  However, based on the information Plaintiff purportedly provided Sheriff Ward on the day of the assault, Sheriff Ward could not have violated Plaintiff's Eighth Amendment rights in denying an immediate transfer.  And, to hold him liable for Plaintiff's assault under those facts would establish his liability only as the guarantor of Plaintiff's safety.

The *only* evidence Plaintiff has provided to show that Sheriff Ward knew of a substantial risk of harm is *his testimony* regarding the letter he purportedly provided Sheriff Ward drafted and signed by Plaintiff's assailants, stating that they would assault Plaintiff if Sheriff Ward did not transfer the Plaintiff to a different cell.  Plaintiff did not produce the *actual* letter, because, as he conveniently testifies, Payne took that letter out of the little box under Plaintiff's bunk after the assault.  However, Sheriff Ward cannot be deemed to have received the letter described by the Plaintiff for purposes of this Motion to Dismiss, because it is inadmissible hearsay that does not fall under any hearsay objection.  Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (Inadmissible hearsay "cannot be considered on a motion for summary judgment").  Hearsay is an out of court statement offered for the truth of the matter asserted.  Fed. R. Evid. 801.  In this case, Payne's letter to Sheriff Ward is itself hearsay, and the contents of that letter are hearsay within hearsay.  While Plaintiff may offer this testimony for the fact that Payne drafted and signed a letter that he gave to Sheriff Ward, he may not offer that testimony to show that Sheriff Ward had knowledge of the information in letter.   The content of this letter is the *only* evidence Plaintiff has offered to indicate that Sheriff Ward had knowledge of a substantial risk of harm to the Plaintiff.  Because this evidence is inadmissible for purposes of this Motion to Dismiss, the Plaintiff has not substantiated his failure to protect claim against Sheriff Ward.

Even if this evidence were admissible, it is clear from the Plaintiff's own testimony that Sheriff Ward did not "refuse[] to verify underlying facts that he strongly suspected to be true, or decline[] to confirm inferences of risk that he strongly suspected to exist."  Farmer, 511 U.S. at 842 n.8.  Rather, the Plaintiff testifies that Sheriff Ward considered his request for immediate transfer, and decline to transfer him at that time because he did not have space for the Plaintiff elsewhere in the jail.  Further, the Plaintiff testifies that the Sheriff told him that he knew the

inmates in his cell and neither Payne nor any other inmate would harm him. The evidence reflects that Sheriff Ward, not only considered the Plaintiff's request to be transferred, he responded reasonably to that request.

The Supreme Court has held that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 843-44. As the Supreme Court observed in Farmer:

> A prison official's duty under the Eighth Amendment is to ensure " 'reasonable safety,' " Helling, supra, at 33 []; see also Washington v. Harper, 494 U.S., at 225, 110 S.Ct., at 1038-1039; Hudson v. Palmer, 468 U.S., at 526-527 [], a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions," Spain v. Procunier, 600 F.2d 189, 193 (CA9 1979) (Kennedy, J.); see also Bell v. Wolfish, 441 U.S. 520, 547-548 [] (1979). *Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.*

Farmer, 511 U.S. at 844-45 (emphasis added). The only evidentiary basis Plaintiff has provided for Sheriff Ward's liability on his failure to protect claim is that he declined Plaintiff's request for an immediate transfer based 1) on the unavailability of space, and 2) on his personal knowledge of the inmates that the Plaintiff believed would assault him. Either of these bases for denying Plaintiff's request for immediate transfer, however, was reasonable.

Although in Prater v. Dahm, the Eighth Circuit addressed a key issue in this case - whether a prison official may be held liable for failure to protect, under the Eighth Amendment, when his response to notice of a threat to the plaintiff was reasonable. 89 F.3d 538, 541 (8th Cir. 1996). There, the Court held that the plaintiff "alleged no facts from which an inference could be made that the prison officials actually knew of the risk to Prater. Although Prater's pleadings allege that he was threatened by Penn, *threats between inmates are common and do not, under*

*all circumstances, serve to impute actual knowledge of a substantial risk of harm*." Id. at 541 (emphasis added). Further, the Eighth Circuit placed the burden on the plaintiff to establish that the officials response was not reasonable under the circumstances: "Prater's allegations provide no basis for a reasonable factfinder to conclude that the officials responded unreasonably to the risk. As Farmer specifically noted, prison officials may not be found guilty of an Eighth Amendment violation if they respond reasonably to a perceived risk, 'even if the harm ultimately was not averted.'" Id. at 542 (quoting Farmer, 511 U.S. at 843).

Here, Plaintiff has produced no evidence to Sheriff Ward, other than a threat from an inmate whom the Sheriff knew and believed to be harmless, that would have put Sheriff Ward on notice that Plaintiff suffered a substantial risk of immediate harm. Threats such as the one Plaintiff contends he informed Sheriff Ward about are common in jails such as this one, and Sheriff Ward cannot be held liable the guarantor of Plaintiff's safety.

**B.     Neither the decisions of the Eleventh Circuit nor those of the United States Supreme Court placed Sheriff Ward on notice that his conduct would violate the Plaintiff's "clearly established" federal rights.**

Even if Plaintiff had produced evidence to support his Eighth Amendment claims, the Plaintiffs must still prove that the state of the law provided these Defendants "fair warning" that their conduct would violate Decedent's "clearly established" federal rights. Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003). In determining whether the conduct of the Defendants was clearly established as violating Decedent's constitutional rights, the reviewing court must examine the state of the law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at

1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose," here, the Alabama Supreme Court.  Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck v. City of Coral Springs, 354 F.3d 1307, 1318 (11th Cir. 2003) (quoting 28 F.3d at 1149).

### 1.    Deliberate indifference to Plaintiff's medical condition

With respect to the Plaintiffs' claim for denial of medical care, neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a Sheriff may be liable under 42 U.S.C. § 1983 for deliberate indifference to an inmate's medical needs when the inmate received extensive medical treatment for his medical conditions.  As discussed above, Plaintiff received medical treatment and was prescribed and administered medication.  Therefore, Sheriff Ward cannot be deemed to have violated the Decedent's "clearly established" rights under the existing case law, and they are entitled to qualified immunity.  Accordingly, Sheriff Ward is entitled to a judgment as a matter of law as to this claim.

### 2.    Deliberate indifference in Plaintiff's conditions of confinement

With respect to the Plaintiffs' deliberate indifference claim arising out of the Plaintiff's conditions of confinement, neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a Sheriff was deliberately indifferent for incarcerating an inmate in a jail with upgraded plumbing, electrical, water supply, and air

conditioning, and with cells maintained through cleaning and repainting.  Nor has any Court in this Circuit held a Sheriff liable for conditions of confinement where the inmate cannot produce evidence that any condition of his confinement resulted in his injury.  To the contrary, the Supreme Court has held that liability for conditions of confinement exists only where the conditions complained of result in "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347.  Here, Plaintiff only contends that the jail conditions resulted in his contraction of staph infection, a medical condition for which he received immediate and extensive treatment.  Because Plaintiff cannot show that he suffered any harm from his conditions of confinement, Sheriff Ward cannot be deemed to have violated the Decedent's "clearly established" rights under the existing case law, and they are entitled to qualified immunity.  Accordingly, Sheriff Ward is entitled to a judgment as a matter of law as to this claim.

### 3.    Deliberate indifference in failure to protect

With respect to the Plaintiffs' claim that Sheriff Ward failed to protect him from an assault by other inmates, neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held a Sheriff liable for refusing to immediately transfer an inmate because he had nowhere to send him.  Neither has the United States Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court held that a Sheriff may be held liable for considering the threat to the inmate and concluding that the inmate suffered no substantial threat of immediate harm.  Rather, the Supreme Court has held, to the contrary, that "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Farmer, 511 U.S. at 845.  Because Sheriff Ward's response to Plaintiff's request for a transfer was reasonable, Sheriff Ward cannot be deemed to have violated the Decedent's "clearly

established" rights under the existing case law, and they are entitled to qualified immunity. Accordingly, Sheriff Ward is entitled to a judgment as a matter of law as to this claim.

## III.   PLAINTIFF'S CLAIMS UNDER THE FOURTH, FIFTH, FOURTEENTH, AND SEVENTEENTH AMENDMENTS ARE DUE TO BE DENIED.

The Plaintiff has alleged claims against Sheriff Ward under 42 U.S.C. §§ 1983, 1985, and 1988, for violation of his federal rights, guaranteed by the Fourth, Fifth, Fourteenth and Seventeenth Amendments.  In addition to failing to present the Court evidence in support of these claims, the Plaintiff *has not alleged a valid cause of action* under these Amendments.

### A.   Plaintiff's Fourth Amendment claims are due to be dismissed as the Fourth Amendment is not applicable to the facts as alleged.

The Fourth Amendment prohibits unreasonable searches and seizures.  In the instant case, the Plaintiff has not pled facts pertaining to any unreasonable search and seizure.  In fact, the Plaintiff alleges that he was "lawfully detained."  (Doc 1, ¶ 4.)  Indeed, as this Court recognized in its September 10, 2007, Order granting in part the County's Motion to Dismiss, "the Fourth Amendment[] [is] not implicated under the facts alleged in the complaint."  (Doc. 10, p. 7.) Because the Plaintiff has presented no facts or evidence that would otherwise implicate the Fourth Amendment anymore than the facts alleged in his Complaint, Sheriff Ward is entitled to judgment as a matter of law as to that claim.

### B.   Plaintiff's Fifth Amendment claims are due to be dismissed because the Fifth Amendment due process clause does not apply to state and local governments.

Plaintiff alleges that his rights under the Fifth Amendment to the United States Constitution have been violated.  However, the Fifth Amendment's Due Process Clause does not apply to state and local governments, but rather applies only to the federal government.  See <u>Dowdell v.</u>

Chapman, 930 F. Supp. 533, 542 (M.D. Ala. 1996); Knoetze v. U.S. Dep't of State, 634 F.2d 207,

211 (5th Cir. 1981) (decided January 12, 1981)[5]; see also  Buxton v. City of Plant City, 871 F.2d

1037, 1041 (11th Cir.1989) ("The fifth amendment to the United States Constitution restrains the

federal government, and the fourteenth amendment . . . restrains the states, from depriving any

person of life, liberty, or property without due process of law"); Love v. Davis, 14 F. Supp. 2d

1273, 1276 (N.D. Ala. 1998) ("It is well settled that the Due Process Clause of the Fifth

Amendment does not bind state governments.  Rather, it is applicable only to the federal

government").  Indeed, this Court recognized in its September 10, 2007, Order granting in part

the County's Motion to Dismiss, "The Fifth Amendment does not apply to state and local

governments."  (Doc. 10, p. 7.)  Because the Plaintiff has presented no facts or evidence that

would otherwise implicate the Fifth Amendment anymore than the facts alleged in his

Complaint, Sheriff Ward is entitled to judgment as a matter of law as to that claim.

### C.    Plaintiff's Fourteenth Amendment claims are due to be dismissed because the Plaintiff was a convicted prisoner at the relevant time.

To the extent that Plaintiff claims violation of his Fourteenth Amendment rights,

Defendants note that the Plaintiff was convicted at the time of his allegations,[6] and therefore, his

claims fall under the Eighth Amendment, not the Fourteenth.  See Marsh v. Butler County, Ala.,

268 F.3d 1014 (11th Cir. 2001).  In its September 10, 2007, Order granting in part the County's

Motion to Dismiss, this Court recognized, "Because Plaintiff alleges he was a prisoner and not a

pretrial detainee, the Fourteenth Amendment is not implicated."  Because the Plaintiff has

presented no facts or evidence that would otherwise implicate the Fourteenth Amendment

---

[5] See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (decisions of the Fifth Circuit handed down before close of business on September 30, 1981 are binding precedent on the Eleventh Circuit).
[6] In the Complaint, the Plaintiff states in paragraph four that he "was lawfully detained due to serving a sentence for prior convictions."

anymore than the facts alleged in his Complaint, Sheriff Ward is entitled to judgment as a matter of law as to that claim.

> **D.    Plaintiff's Seventeenth Amendment claims are due to be dismissed as the Seventeenth Amendment does not apply in the instant case.**

To the extent the Plaintiff alleges a claim against Sheriff Ward under the Seventeenth Amendment, he has not presented this Court *any evidence* that would support even a colorable claim under the Seventeenth Amendment.  The Seventeenth Amendment states:

> The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote.  The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures.

> When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: Provided, that the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.

> This amendment shall not be so construed as to affect the election or term of any Senator chosen before it becomes valid as part of the Constitution.

The Seventeenth Amendment provides for the direct election of United States Senators; it does not create any private cause of action enforceable under § 1983.  Even if the Seventeenth Amendment created a private cause of action that could be enforced under § 1983, the Plaintiff has presented no facts or evidence that would implicate the Seventeenth Amendment.  Indeed as this Court observed in its September 10, 2007, Order granting in part the County's Motion to Dismiss, "The Seventeenth … Amendment[] [is] also not implicated under the facts alleged in the complaint."  Absent implication of the Seventeenth Amendment in the Complaint, or in the evidence before this Court, Sheriff Ward is entitled to judgment as a matter of law as to that claim.

IV.    **THE PLAINTIFF'S CLAIMS ARE BARRED BECAUSE HE HAS FAILED TO COMPLY WITH THE PROVISIONS MANDATED BY 42 U.S.C. § 1997E(A) OF THE PRISON LITIGATION REFORM ACT ("PLRA").**

The Court's adherence to mandates of the PLRA is essential to ensure that the "flood" of frivolous claims for constitutional violations does not burden and hinder the Court's consideration of legitimate claims presented by pro se litigants.  See Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) ("In an effort to stem the flood of prisoner lawsuits in federal court, Congress enacted the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ('PLRA').").

The first section of the PLRA provides:

> *No action shall be brought* with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*

42 U.S.C. § 1997e(a) (emphasis added).   Under this provision of the PLRA, an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983, and the Court is precluded from granting relief to any plaintiff who has not exhausted *all* his administrative remedies.  However, as the Supreme Court recognized in Jones v. Bock, each prison sets its own parameters for what constitutes compliance with its grievance policy:

> In Woodford*,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ___, 126 S. Ct. 2378 [] -- rules that are defined not by the PLRA, but by the prison grievance process itself. …. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

127 S. Ct. at 922-23.

Here, the Plaintiff has filed no grievance with respect to any claim alleged in his Complaint.   The Plaintiff has not complied with the provisions of the Geneva County Jail

grievance policy. Therefore, he cannot be deemed to have exhausted all available administrative remedies provided by the Geneva County Jail grievance policy, as is required by § 1997e(a) of the PLRA. Accordingly, he cannot proceed on these claims, even if he had provided sufficient evidence to support them, until he complies with the Geneva County Jail grievance policy. See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies), and Defendants are entitled to have Plaintiff's claims against them dismissed.

## CONCLUSION

Based upon the foregoing, no genuine issue of any material fact exists as to Plaintiff's claims against the Commission, and summary judgment is due to be granted as a matter of law as to all of the Plaintiff's claims.

Respectfully submitted this 9th day of September, 2008.

**s/C. Richard Hill, Jr.**
KENDRICK E. WEBB (WEB022)
C. RICHARD HILL, JR. (HIL045)
JOSEPH L. HUBBARD, JR. (HUB015)
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
(334) 262-1850 - Telephone
(334) 262-1889 - FAX
E-mail:  rhill@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **J. E. Sawyer, Jr., Esquire.**


**s/C. Richard Hill, Jr.**
OF COUNSEL