# Exhibit D
# Deposition of Dennis Rudd

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

CASE NUMBER: 1:06-cv-233-WKW

DENNIS RUDD,
Plaintiff,
vs.
GENEVA COUNTY COMMISSION
and SHERIFF GREG WARD,
Defendants.

BEFORE:
Cynthia M. Noakes, Commissioner
and Certified Court Reporter

DEPOSITION TESTIMONY OF
DENNIS RUDD

*****************************

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 2

S T I P U L A T I O N

IT IS STIPULATED AND AGREED by and between the parties through their respective counsel, that the deposition of DENNIS RUDD may be taken before Cynthia M. Noakes, Court Reporter, at the Law Offices of J.E. SAWYER, JR., 203 South Edwards Street, Enterprise, Alabama 36330, on the 15th day of July, 2008.

IT IS FURTHER STIPULATED AND AGREED that the signature to and the reading of the deposition by the witness is waived, the deposition to have the same force and effect as if full compliance had been had with all laws and rules of Court relating to the taking of depositions.

IT IS FURTHER STIPULATED AND AGREED that it shall not be necessary for any objections to be made by counsel to any questions except as to the form or leading questions, and that counsel for the parties may make objections and assign grounds at the time of the trial, or at the time said deposition is offered in evidence,

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 3

or prior thereto.

IT IS FURTHER STIPULATED AND AGREED that the notice of filing of the deposition by the Court Reporter is waived.

****************************************

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 4

INDEX

| EXAMINATION BY: | PAGE NUMBER: |
|---|---|
| MR. HILL | 6-78, 80-87 |
| MR. SAWYER | 79-80 |

EXHIBITS INDEX

DEFENDANTS'

| | | |
|---|---|---|
| 1 | Deposition Notice | 7 |
| 2 | Booking Sheet | 21 |
| 3 | Booking Sheet | 21 |
| 4 | Case Action Summary | 24 |
| 5 | Inmate Release Sheet | 25 |
| 6 | Complaint | 27 |
| 7 | Notice of Claim | 28 |
| 8 | Prisoner's Activity Sheet | 31 |
| 9 | Inmate Medication Log | 51 |

Reporter's Certificate 88

***********************************

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

APPEARANCES

ON BEHALF OF THE PLAINTIFF:
MR. J.E. SAWYER, JR.
ATTORNEY AT LAW
203 South Edwards Street
Enterprise, Alabama 36330
(334) 347-6447

ON BEHALF OF THE DEFENDANTS:
MR. C. RICHARD HILL, JR.
WEBB & ELEY, P.C.
ATTORNEYS AT LAW
7475 Halcyon Pointe Road
Montgomery, Alabama 36124
(334) 262-1850

ALSO PRESENT:
MARY MASON, Plaintiff's Mother
DREW LEWIS, Law Clerk

*******************************

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

I, CYNTHIA M. NOAKES, a Certified Court Reporter of Eufaula, Alabama, acting as Commissioner, certify that on this date, as provided by the Alabama Rules of Civil Procedure and the foregoing stipulation of counsel, there came before me at the Law Offices of J.E. SAWYER, JR., 203 South Edwards Street, Enterprise, Alabama 36330, beginning at 1:40 p.m., DENNIS RUDD, witness in the above cause, for oral examination, whereupon the following proceedings were had:

DENNIS RUDD,
being first duly sworn, was examined and
testified as follows:

THE COURT REPORTER: Usual stipulations?
MR. HILL: Yes.
MR. SAWYER: Yes.

EXAMINATION

BY MR. HILL:
Q. Mr. Rudd, my name is Rick Hill. I represent

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

the Geneva County Commission and Sheriff Greg Ward. And we're here in Enterprise, Alabama, at the office of your lawyer in this case that you brought against those two groups, Dennis Rudd v. Geneva County Commission and Sheriff Greg Ward.
I sent a Notice of Deposition to your lawyer to get this deposition arranged. And this is a copy of that. I want to submit that as Exhibit 1
(Defendants' Exhibit No. 1 was marked for identification and a copy of the same is attached hereto.)
Q. We were talking earlier, before the deposition, about that you had taken some medication and, you know, sometimes you need to concentrate on the questions that you hear and that type of thing.
Are you hearing me clearly right now? Are there any barriers to our communication right now?
A. No, no barriers, not at this point. It just comes and goes. I'm diagnosed Post Traumatic Stress Disorder, paranoid schizophrenic. And I've got letters from my doctor. It directly occurred

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

from the beating that I suffered and almost died from in 2005. It's right here if you want a copy of it.
Q. No, I don't need a copy of it. Will you do me this favor: You said it comes and goes. If it goes at some point, will you let me know? If there's some reason why you're not following my questions or why you're not understanding what we're talking about, will you let me know?
A. If I stop and get quiet, it's probably happening then.
Q. Okay.
A. But like I said, I've been ready for this. For four years I've been waiting, so let's go with it.
Q. Okay. Well, here we are. What I'm trying to make sure of that this is the only chance I get to ask you questions for right now, and so I just want to make sure that you're able to answer my questions fully and truthfully.
A. As long as I'm on my medication, I'm all right. But, now, my doctor says I've got to stay on it the rest of my life.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 9

Q. Are you on your medication now?
A. Oh, yeah.
Q. What medication is that?
A. All these.
MR. SAWYER: Just tell him.
THE WITNESS: Okay.
A. Ibuprofen 800 milligrams; Flexeril, Seroquel, Vistaril, Tramadol. I believe that's it. And Zoloft. Excuse me. Zoloft.
Q. Do any of those medications make it difficult for you to follow along, have a conversation clearly and understand what's being asked of you?
A. At this point, yeah. I'm all right right now. I understand. Like I said, it comes and goes. Mostly at night, when it's quiet in my room, I hear voices and I have nightmares. It's kind of hard to explain.
It's kind of like, I reckon, a Vietnam vet would be when he comes home and he wakes up screaming.
Q. We'll go into that in just a minute, if that's all right. Let me get just a couple more

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 10

things off the ground before we start heading into the case that you filed.
I just want you to understand that we're here in a deposition and that your answers are sworn testimony?
A. Exactly.
Q. The court reporter is writing down what you say and what I say.
A. Uh-huh.
Q. It will be helpful to her, when you answer the questions, if you'll either answer yes or no, instead of uh-huh or huh-uh. She can't really take that down. And she can't take down when you nod your head this way or nod your head that way. So if you could help her out by answering out loud.
A. Okay.
Q. Have you ever given a deposition before?
A. No.
Q. Okay. Has your lawyer explained to you basically what a deposition is and what we're doing here today?
A. Yeah.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 11

Q. Okay. Like the court reporter said and I said earlier, we're taking this deposition and you're under oath. We can use what we're talking about here today at a trial, just like it was a trial.
A. Use it as evidence, right?
Q. That's right. And her job is to take down what we're talking about.
If you could do me one favor, and I'll try to do you the same favor: If I'm asking you a question, if you'll just let me finish my question and then answer it. And I'll also try to give you ample time to answer the question the way you see fit.
A. All right.
Q. If for some reason you need a break, if you'll please let me know, and we'll try to work that out too.
A. All right.
Q. Do you understand what we're doing here today and the process we're about to follow?
A. Yes.
Q. Okay. Would you please state your full name

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 12

for me?
A. Dennis Donald Rudd.
Q. Okay. Have you been known by any other names?
A. No.
Q. Okay. Do you have any nicknames anybody calls you?
A. No.
Q. Okay. What's your current address, Mr. Rudd?
A. 625 Faith Street, Enterprise, Alabama 36330.
Q. Is that a house or an apartment?
A. It's a trailer.
Q. Okay. How long have you lived at that address?
A. About a year and a half.
Q. Okay. What is your date of birth, Mr. Rudd?
A. 1/12/60.
Q. Do you have a driver's license?
A. Yes.
Q. Do you know what that number is?
A. It's 3914039.
Q. Are you currently employed?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

A. No. I'm disabled.
Q. Are you getting a disability check from Social Security?
A. Not yet, but I have filed for it. I've got a copy right here if you want to see it. VA disability.
Q. Have you had some jobs in the past?
A. Oh, yeah.
Q. What different jobs have you had?
A. I paint for a living. That would be the only job I've ever done.
Q. Did you start doing that when you were a teenager?
A. Yeah.
Q. When was the last time you --
A. I grew up in it.
Q. Sure. When was the last time you had a painting job?
A. Well, I've tried to work a couple of times, before I filed this disability. I was wanting to get back on my mind right, because nobody wants to live like this the rest of their life. And I figured as the medication came on to me, my doctor

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

said it would take a while; and I wasn't able to work. But I did try to a couple of times, but I just gave it up. I couldn't do it. Nobody wants to hire nobody part time. And they find out you've got a mental condition, they don't want to hire you at all. And then all the medication that I'm on, every pill causes drowsiness, and I'm drowsy all the time, tired.
Q. Are you drowsy right now?
A. A little bit. I don't take my stronger medicine until bedtime, and then some of them I take in the mornings. The ones that make me real drowsy, I take it at night.
Q. Have you been married before, Mr. Rudd?
A. Yeah.
Q. Who were you married to? How many times have you been married?
A. Three.
Q. What were your ex-wives' names?
A. Leslie Morgan was the last one.
Q. Okay.
A. Let's see. Debbie.
THE WITNESS: What was Debbie's last

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

name.
MS. MASON: I can't remember her last name.
A. I ain't good with the maiden names.
Q. Who was the one before Debbie?
A. Fowler. Debbie Fowler.
Q. Okay. And who were you married to before Debbie?
A. Becky Hutto.
Q. Do you have any children?
A. One.
Q. What's your child's name?
A. Tiffany.
Q. Do Leslie, Debbie, Becky, and Tiffany all live in this area, or do they live somewhere else?
A. I've heard rumors that Becky lives here, but I haven't seen her. Debra, I hear she's out in Tampa, but I ain't seen her in ten years. Leslie I ain't seen in 12 years.
Q. How about Tiffany?
A. Tiffany? I call her about once a week, my daughter.
Q. Where does she live?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

A. Douglas, Georgia.
Q. Okay. Besides your mother, do you have any other relatives in Coffee County?
A. I know I stated that I live in Enterprise, Alabama, but it's got a Dale County address.
Q. Okay.
A. I don't know why. It's on the county line. It's my mother's address. But I don't know why. You just step over the line and you're in Dale County.
Q. Sure. Besides your mother, do you have any other relatives in Dale, Coffee, or Geneva County? Any brothers, sisters, cousins?
A. Yeah. Dale County.
Q. Is that where most of your family is?
A. At this point, yeah.
Q. And with your lawyer's permission, can I obtain a list of relatives that might be -- I might need to know about before we strike a jury or something like that? I just want to make sure that none of your relatives end up on our jury.
MR. SAWYER: Yeah.
Q. Have you ever served in the military?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

A. Yes.
Q. What branch of service were you in?
A. Army.
Q. When did you serve in the Army?
A. '78, '79, '80, '81.
Q. Okay. And where did you go to school? Did you go to school here in Enterprise?
A. Yeah.
Q. What was your last year of school?
A. 9th.
Q. Okay. When you worked as a painter, were you working for yourself or did you work for a company?
A. I had a company one time, 12 to 15 years ago. When Leslie left me, I just gave it up. And since then, I've been working for people. I'd get a little job here or there. But basically I ain't did a whole lot of work in the past ten years to amount to nothing.
Q. Okay.
A. I ain't been able.
Q. Sure. Have you ever filed a lawsuit before?
A. No.

Q. And besides the divorce suits, have you ever been involved in a lawsuit before as a plaintiff or as a defendant? Have you ever been sued or sued anybody?
A. Huh-uh, no. Tried to one time, but the fellow went bankrupt. My lawyer got a letter from his lawyer saying that he don't owe you nothing; he just filed for bankruptcy. And that was the end of it. I've been to an arbitration hearing.
Q. What was that about?
A. It was a contractor here in town subbed me an apartment complex in Atlanta, Georgia. And the owner came from Italy. It had been subbed out about five times. And I was the actual one doing the work; the rest of them were just waving out the window when they rode by, if you know what I mean.
Q. Right.
A. Well, the owner came from Italy, I believe. He bought the complex to remodel it and then turn around and sell it and make him a couple million on the side or whatever.
Q. How did that turn out?

A. The fellow that I had -- I wasn't subpoenaed or nothing, but he wanted me to go with him and be a witness as to what I done.
Q. Okay. I see.
A. Anyway, he won his money, but he wouldn't pay me mine. He got paid full price of the contract, and we was only halfway through. There's a glitch there that you can't run nobody out. In two weeks you've got to try to work it out or whatever. I don't know what you call it.
But the man just run us off, as soon as he come up in the parking lot. And the boy I subbed it from sued the Italian guy, the money man. He got his because he defaulted the contract. But when I tried to get mine from him, he didn't want to give me mine.
Q. Sure. I appreciate it. That's what I need to know.
A. All right.
Q. Now, this incident that you've sued the sheriff and the county about, obviously it happened in the jail.
A. Yeah.

Q. And it's my understanding that after that, you were convicted of -- well, that you were convicted and that you went to the state penitentiary for a time.
You're now out of jail; is that right?
A. Been out.
Q. Okay. For about a year and a half?
A. Yeah.
Q. Okay. Aside from the time that you were in the Geneva County Jail, aside from what this whole thing is about, that time, what other criminal convictions have you had? What other times have you been convicted of a crime, besides this most recent thing?
A. Well, before that's, it's been 20 years or so, I think I had a possession of marijuana. I've had a couple of DUIs. Until this come about, I hadn't been in no trouble at all for like 15 years, or 12 years.
And when this all come down, I got called on all them charges before I went to court on the first one. So they just ran them all together, and I ended up with an eight-year sentence. I had

four eights that ran concurrent, and I had a five split one run concurrent with that; so I ended up with eight years. I did a year and nine months, and I've been out a year and a half.

Q. Okay. Let me show you a couple of things and maybe you can help me understand them.

A. All right.

MR. HILL: This will be Exhibits 2 and 3.

(Defendants' Exhibit No. 2 and Defendants' Exhibit No. 3 were marked for identification and a copy of the same is attached hereto.)

Q. I've got here the booking sheet, and that's dated in January, January the 6th of 2005; is that right?

A. Yeah.

Q. And, again, I'm sorry; I don't want to get in your space here; I'm just trying to read over your shoulder.

A. No, that's all right.

Q. And the way I see this booking sheet, you've

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

got four charges.

A. Yes.

Q. Manufacturer of methamphetamines first degree, possession of a controlled substance, possession of drug paraphernalia. And what is this one, Mr. Rudd? Possession of --

A. I don't know.

Q. Of something else. I'm not sure what it says. If you can help me out maybe in understanding this. This is dated about a month later. And it's also got your name on it.

A. Right.

Q. And this one --

MR. HILL: And this is Exhibit 3 that I'm talking about. The earlier one was Exhibit 2.

Q. Exhibit 3 says that you are charged with the unlawful manufacturing of a controlled substance.

A. Well, these are different bookings, but, see, I was in -- Are we going to get around to what happened and everything?

MR. SAWYER: Dennis, he's entitled to ask you these questions. Answer them as best you can. Okay?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

THE WITNESS: That's what I'm trying to do.

MR. SAWYER: Okay.

Q. That's exactly where we're headed, Mr. Rudd. We're starting at the beginning, and I'm going to get you right to where you want to go.

A. Okay.

Q. But what I want to understand is, were these two separate incidences? Were you arrested on two separate occasions a month apart, or is this all part of the same arrest?

A. No. This was a month later, just like it says.

Q. Okay. I understand.

A. But these charges are these charges. See, I was out on bond on this right here. And then when I got out of the hospital -- see, I was sick through these months at the VA hospital. And I went home with my mother; I told her to call Geneva. They bonded me out, and I didn't have to pay nothing because I had this disease, this disease, and this disease; and they didn't want me in there.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Q. Sure. Mr. Rudd, I think I just understood something that you can save us some time.

A. Okay.

Q. In Exhibit 2, you were booked on these charges that we've talked about. Then you were bonded out. And then Exhibit 3 is a separate one where you went back to the jail; is that correct?

A. Yeah, yeah. They come picked me up on the same charges.

Q. That's fine. Now I understand. I just didn't understand before.

A. Yeah. I wouldn't either if I wasn't there.

Q. Then I've got here what I'm going to mark as Exhibit 4, Mr. Rudd.

(Defendants' Exhibit No. 4 was marked for identification and a copy of the same is attached hereto.)

Q. Please take your time in looking at that, but the way I understand that, Exhibit 4 is from June of '05, and that shows where you were convicted of some or all of the charges that we just talked about. Is that right?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 25

A. This is not correct.
Q. What's not correct, Mr. Rudd?
A. It says ten years; it wasn't but eight years.
Q. Okay. Is it fair to say --
A. This looks like the plea that I took.
Q. If I could finish my question real quick. Is it fair to say that in June of 2005, you were convicted of some or all of the charges that were against you?
A. Right.
(Defendants' Exhibit No. 5 was marked for identification and a copy of the same is attached hereto.)
Q. And then at some point after that, probably immediately after that, I've got Exhibit 5 which shows you being released to Kilby Prison; is that correct?
A. That's correct.
Q. So tell me if I understand correctly, because I want to make sure that I understand, Mr. Rudd.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 26

You were first picked up in January of 2005 for these charges that we've talked about -- possession of a controlled substance; at some point you bonded out; and then you were picked up again in February of '05?
A. Yeah. After I got out of the hospital.
Q. And other than the time that you were in the hospital, from that second arrest all the way until June, you were in the Geneva County Jail; is that fair to say? a roughly four-month period?
A. I don't think I was there four months.
Q. Okay.
MR. SAWYER: Don't speculate.
Q. I'm not trying to trick you at all, Mr. Rudd.
A. I'm just trying to answer the best I can. It's been four years; it's hard to remember all that.
MR. SAWYER: Just don't guess or speculate. All he's doing is asking questions that we are entitled to give him.
THE WITNESS: Yeah, I understand.
A. Some of them I'm just stumped on.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 27

Q. Sure.
A. I can answer it. It might take me a minute or two, but...
Q. Well, the question that's before you is whether it would be fair to say that from roughly February 2005 until June 2005, the question being, were you in the Geneva County Jail during that time, except for the time that you spent in the hospital?
And if you need a minute or two to think about it, please --
A. I'd say yeah.
Q. Okay. I know you want to talk about why we're here, in your words, so let's talk about that for a little while; then I'm going to go back and ask some other questions I'm interested in talking about, and then we can go back to it again a second time.
A. All right.
(Defendants' Exhibit No. 6 was marked for identification and a copy of the same is attached hereto.)

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 28

Q. Mr. Rudd, do you recognize this document right here that I've marked as Exhibit 6?
A. This is the lawsuit, isn't it?
Q. It is.
A. Okay.
Q. Again, it's not a trick question; I just wanted to see if you recognized it.
A. Yes, sir.
(Defendants' Exhibit No. 7 was marked for identification and a copy of the same is attached hereto.)
Q. And what about this document that I've marked as Exhibit 7? Do you recognize this and your signature at the bottom?
A. I believe this is the Claim.
Q. Okay. And is that your signature at the bottom of it?
A. Yes, it is.
Q. Okay. I want to talk about your Complaint and your Claim just for a minute.
Your lawyer has done a great job in drafting these documents, and I understand that that's why

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

you hired him; and I'm not asking you to be a lawyer here.

What I want to make sure I understand are the things that you are complaining about and the reason why you brought this lawsuit. So correct me if I'm wrong, but the way I understand your Complaint and your Claim is I understand it as basically three different things that you're complaining about. And, again, please tell me when I'm wrong. The first thing is the fight or where you were attacked.

A. The second thing.

Q. Okay. In whatever order you want to put it in, that's one of the three, the way I understand it.

A. Yes.

Q. The second thing or another thing is the staph infection.

A. Uh-huh.

Q. And the third thing is overcrowding in the jail. Is that fair to say that those are three things that you are complaining about and reasons why you brought this lawsuit?

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

A. Yeah.

Q. Okay. And, again, I'm not trying to trap you. But am I missing any big thing besides those three things? And I'm not saying those aren't big things. But is there any other big thing that you're thinking about that I'm not thinking about?

A. My mental disorders: schizophrenic and Post Traumatic Stress Disorder.

Q. That came from the fight; is that right?

A. Yes. The beating.

Q. The beating. Okay. Well, I want to talk about those three things now, and we'll go into some detail about them.

A. Okay.

Q. First off, let's talk about the fight, the beating, whatever you want to call it.

It's my understanding -- and I'm not trying to pin you down on an exact date, but it's my understanding that this beating/fight took place on February 24, 2005. Does that sound about right?

A. (No response.)

Q. If this helps you, I've got what I'll mark

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

as Exhibit 8. Mr. Rudd, let's see if this helps you.

A. All right.

(Defendants' Exhibit No. 8 was marked for identification and a copy of the same is attached hereto.)

Q. This is Exhibit 8 and it's entitled Prisoner's Activity Sheet. It begins on January 6, 2005; and this one ends March 11, 2005.

If you can -- do you mind reading this entry on February 24th out loud into the record?

A. (No response.)

Q. Or I will, if it helps.

MR. SAWYER: Have you marked that?

MR. HILL: I did. It's Exhibit 8, a two-page exhibit.

A. Now, what was it you were asking me about these two documents?

Q. What I'm just trying to do is to get generally a date that this fight or attack took place. My records indicate that date was February the 24th of 2005. And I wanted you to look at

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

that exhibit to see if that refreshed your memory and whether you --

A. Yeah, it refreshes my memory. It's all in my head; it's been there ever since it happened. But the exact date, I can't just sit here and spit it out because some of them I might not know, probably all of them, as to what date it was that it happened. I can say it was this month or that month, but I can't give you no date.

Q. I think earlier we agreed that you were in the Geneva County Jail from approximately February until approximately June of 2005; is that right? Do you remember when we were talking about that earlier?

A. Yeah, I remember it. But, like I said, I can't -- I don't know the dates.

Q. Okay.

A. I'm sorry if I'm confused, but I can't help it. Okay? I'm on medication and I just can't remember -- sorry -- the dates. But what happened is, all this did happen; I just can't remember exactly what date it was.

Q. Okay. Do you have a clear memory of what

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

happened?
A. Oh, yeah. Yeah.
Q. Do you have a clear memory of what year that it happened?
A. 2005.
Q. Do you have a clear memory of whether it was early in the year or late in the year?
A. That's what I was trying to think. When I got there, it was --
MS. MASON: You were in there on your birthday, January the 12th.
THE WITNESS: I got there in January, didn't I?
MS. MASON: You were in there. Because you wanted me to bring you something and I couldn't.
Q. Mr. Rudd, if you can't remember, that's fine. I don't want you to remember something you don't remember.
A. Okay.
Q. On the entry in Exhibit 8 that I've been talking about, the entry says that you were involved with a fight with David Allen Payne.

Is David Allen Payne the person who attacked you that day?
A. He started it, yes, sir.
Q. What happened that day that led up to you --
A. In detail?
Q. Well, let's just break it up into pieces. Okay? Before the fight or attack or whatever you want to call it, what happened with you and Mr. Payne which caused the fight or attack to occur?
A. Well, when they got me back, after they went and picked me back up and I was in the cell there -- they don't close the cell doors; the cell doors are open. They've got a bullpen which was overcrowded, yeah.
There was a young man in there. He was in my cell. And I hadn't been in there long, a few days maybe. But this young boy sliced his wrist. I didn't know none of them.
So I, I got my towel and I tied a pressure bandage around his wrist. And these three guys, black guys, come in there and told me to take it off. And I told them I wasn't going to take it off. The boy ain't but 19. I mean, y'all are

going to have to do me if you're going to do him. I ain't going to let it happen. I ain't got it in me to let it happen.
But anyway, they come and took him to the emergency room, and everything was calmed down. But this fellow, DAP, the one that started it --
Q. What did you call him?
A. DAP.
Q. DAP? Is that what David Allen Payne went by?
A. DAP, yeah. Nickname.
Q. Okay. Keep going, Mr. Rudd.
A. Let's see. They told me if I didn't take the towel off, I would be next. They said, "We don't like him; he's a punk. He's a smart ass, and we don't want him in here. And you've got staph infection; we don't want you in here." The inmates told me this. Three big, big black dudes. I mean, I ain't prejudiced, but I'm telling you like it was.
And one of the black guys said, told me, said his uncle was the jail administrator. A little black guy. What's his name?

Q. Carl Rowe?
A. Carl Rowe, right. And the black boys sat down and wrote up a letter and gave it to me. And he told me, "Take this to Carl Rowe and get him to show it to the sheriff. He said he's going to take you out of here."
Q. Take who out of here?
A. Me.
Q. This was before the incident with DAP?
A. Yeah. The night before.
Q. Okay.
A. Anyway, when I went to see the sheriff, he said, "No. I ain't got nowhere else to put you. You're going back in there. Them boys ain't going to hurt you. They've been here a long time. I know them boys; they ain't going to hurt you."
And I told him, "Yes, sir. It's right here on paper." I said, "They wrote it. They want you to sign it."
And he said, "I'm not signing it." I said, "Well, I want it notarized."
And it said that the sheriff and Carl Rowe knew that I had staph infection and that my life,

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 37

putting me back in the cell block, my life would be in danger, and had it notarized.
Q. Is that what you're looking at right now?
A. No. I don't have it. Mr. DAP stole it out of my file for my records. I had a little box under my bunk which I kept all my paperwork in.
Well, when I went to the hospital for two weeks, they didn't come get my box; they just left it under the bed. And this Mr. DAP, he went through my files, and he took that form.
Q. Did you give a copy of that form to anybody else?
A. No.
Q. Did you give a copy to Sheriff Ward?
A. No.
Q. Did you give it to any of the deputies or jailers?
A. They didn't want nothing to do with it.
Q. Okay. So we are still the night before the attack or the fight, and you've written up your report that DAP stole?
A. That day, yeah.
Q. Okay. What happened next?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 38

A. I told him they was just going to have to live with me. They told me to go in the cell and don't come out. "We don't want you out here around us." I couldn't even come out of the cell to get my food. I had to get somebody else to get it for me.
But that night the boy cut his wrist. And that blood, I reckon it just drove him crazy. This DAP fellow --
Q. Mr. Rudd, did he cut it for a second time, or was this the first time that he cut it?
A. I think it was the second time.
Q. Do you remember his name, the boy who cut his wrist?
A. Yeah. I read it in paper, the obituaries the other day.
Q. Do you remember what it is?
A. A couple weeks ago I was reading that in the paper.
MR. SAWYER: If you remember it, tell me, and I'll tell them. Okay?
THE WITNESS: Okay.
MR. SAWYER: If you remember it --

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 39

THE WITNESS: Okay. At this point, I don't.
MR. SAWYER: If you remember it, tell me. They're entitled to know that. And I'll furnish it to them. Okay?
Q. Okay. Let's make sure I'm right on the chronology. We're done the night before, the boy whose obituary you just read, cut his wrist?
A. Yeah. Sailor.
Q. Okay. Now we're at the next day. And my question to you was did he cut his wrist for a second time that day or was it still bleeding from the night before?
A. No. They took him to the hospital and sewed him up and brought him back.
Q. Okay. So now he's back. And you can't get out to get food. What happened next?
A. That morning -- Well, let me say that Mr. DAP, while the other boy was in the hospital, when he seen blood -- He's got cuts all up and down his arms where the man tried to kill himself. He's just crazy.
Q. Right.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 40

A. Well, he starts slinging stuff around the cells, beating and banging, and trying to jerk a TV off. Carl Rowe come and took the TV from us.
Q. This is the next day. This is after he got back from the hospital; is that right?
A. Yeah. Yeah, I think so.
Q. He took the TV. Then what happened?
A. It was like looking at that blood just drove him crazy.
Q. Drove who crazy?
A. This Mr. DAP guy. And Carl Rowe come back there, told him he better quieten down or he was going to have to make some other arrangements. And I told him, "Please take him out of here. The man's crazy."
Q. When Mr. Rowe came out there, did you tell him that you were concerned about your safety or of his safety?
A. Yeah.
Q. And what did he say?
A. I had it on paper.
Q. That's your notarized thing?
A. Yeah. He'll remember. I can tell you it's

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

the truth.
Q. Okay. After he took the TV, what happened next?
A. The man remained defiant. He just went crazy. Stayed up all night screaming and hollering and banging on the walls.
Q. So we're now -- This whole thing started the day before he went to the hospital, and now we've got all the way into the next day, and we're into the evening time; is that right?
A. Yeah.
Q. Okay. What happened next?
A. Next they beat the crap out of me. Three, not one. DAP's the one that started it, but there was two more that jumped on me. It didn't take five seconds and they come in on me. He had me on my back, and the other two started kicking me.
Q. All right. Was the 19-year-old boy still there when they jumped on you?
A. No. The second time he cut his wrist, they sent him to see a mental psychiatrist or something. He never came back in there and I never seen him again. Todd Sailor was his name.

Q. Sailor? Like a sailor that goes out on the sea Sailor?
A. I believe so, yeah. I was reading the obituaries the other day, and there he was. So four years later he finally got his wish, apparently.
Q. All right. I'm a little confused about the timeline still. And I'm asking because I'm confused, not because you are.
A. Okay.
Q. The way I understand it is the night before you were attacked or got in a fight, this Sailor fellow tried to kill himself by cutting his wrist; is that right?
A. Uh-huh.
Q. And that bothered DAP and the others, and they started making commotion about it; is that right?
A. DAP did.
Q. The next thing, as I understand it -- please correct me if I'm wrong -- is that you tried to help this Mr. Sailor by putting a towel on his wrist?

A. Yes, sir.
Q. And as I understand, that also bothered DAP and his friends?
A. Yeah. They didn't like him.
Q. Okay. At some point that first night, after you tried to help him with his wrist, he was taken to the hospital; is that correct?
A. Yeah.
Q. Okay. And at some point that night, you typed out or wrote out a statement?
A. They did.
Q. Who did?
A. It was like my statement, but they wrote it.
Q. Who is "they"?
A. The boys that jumped on me.
Q. Okay. And their statement said what? I misunderstood that part.
A. It simply stated that they knew that I had staph infection and hepatitis, and they didn't want me in there; that my life was in danger, as well as theirs.
I can't blame them. I wouldn't want to be in there with a fellow eat up with something

either. I don't want to catch it. People are dying over there from it; you know what I'm saying?
Q. Their life was in danger because of the staph infection?
A. Yeah.
Q. Is that what they were trying to say?
A. Yeah. But not mine. My life was in danger because -- Well, you could say staph infection, first off.
Q. Okay. Is that document that you're talking about, is that what was under your bed or what was in that box?
A. Yeah.
Q. Okay.
A. But it existed.
Q. Was there anything in that statement about how DAP or anybody else was going to assault you or attack you? Was there anything in the statement about that?
A. It just said my life was in danger.
Q. Because of the staph?
A. Yeah. No. It was the staph -- Yeah, I was

sick with the staph. But what they done to me made the staph look like measles.

Q. But that's different than what was in that statement though. What I'm saying is DAP didn't write out a statement that said: I'm about to attack Mr. Rudd.

That's not what the statement was about; it was about the staph infection?

A. No. They was about to attack me if he don't take me out.

Q. So they wrote out a statement --

A. He told me the guy was his uncle, this Carl Rowe; and that he'd take care of it, that he was going to get Carl to take me out.

And he wrote up this letter. And it had like witness, witness, and...

Q. So you're saying that DAP wrote out a statement that said: I am going to attack Mr. Rudd unless you take him out. And he got it witnessed and notarized?

A. I got it witnessed and notarized and had another copy made. And I give them boys a copy and I kept a copy.

Q. And the statement was, "I am going to attack Mr. Rudd"?

A. It just stated that my life was in danger; and they knew it and refused do anything about it. And I had it notarized.

Q. Okay.

A. Now, as far as the letter goes, there's witnesses that seen it.

Q. That seen what?

A. The letter I'm talking about that got stolen.

Q. Okay. We've gone through that first night. Again, tell me if I get something wrong on the order or how this happened.

A. Okay.

Q. At some point, Mr. Sailor comes back from the hospital; is that right?

A. The first time. He cut his wrist twice. The second time, they sent him on to get some help.

Q. Okay. The first time, he comes back; and he starts cutting himself up and tearing up the cell, including the TV; is that right?

A. DAP was.

Q. Okay.

A. The man went crazy. I didn't have nothing against him. Just that night before, he cut my hair for me. He was a likable guy. But he just freaked out when he seen that blood, like a rabid dog would do. He went crazy, and they wouldn't take him out. So I asked them to take me out; and they wouldn't take me out neither. In just an instant, he went from a poodle to a bulldog.

Q. DAP?

A. Uh-huh.

Q. Okay. Somewhere in there Mr. Sailor attempted suicide again; is that right?

A. Yeah. The next day I believe.

Q. Okay. And --

A. I don't know if it all happened in one day or it all happened in two days.

Q. Well, I'm kind of mixed up too?

A. Yeah. Well, I can't just -- Like I was saying a while ago, it was four years ago. And, you know, I can't remember just exactly what day it was. It wasn't over a two-day period. I don't

think I was in there but, the second time, maybe three times when this beating occurred. And I stayed in the hospital, ICU, for two weeks.

Q. Let's keep it on what we're talking about, and then we'll go there. Okay?

I'm confused on the chronology, Mr. Rudd; I'll be honest with you. I'm not sure when people came in and out and how long it was. But let's move on to the fight itself.

Right before you were attacked, what were you doing?

A. Right before I was attacked?

Q. Uh-huh.

A. I was getting my breakfast tray.

Q. Okay. Had you said anything to DAP or them before that?

A. Huh-uh. Not a word. I didn't want nothing to do with them.

Q. Okay. And then they attacked you. How long were they attacking you before -- Well, did you yell out when they were attacking you?

A. Yeah. When the other two came in there and started kicking me and stomping me, yeah, I yelled

out.
Q. And how long were they attacking you before it was broken up?
A. I'd say 30 seconds.
Q. Okay. Who broke it up?
A. They basically just quit when they seen what they'd done to me. I reckon they figured I'd had enough. The guard come running back there, but it's just a little old gal about maybe early 20s and five foot tall. She couldn't do nothing with that situation. She just stood there and screamed at them.
Q. Did they stop?
A. Yeah, finally they stopped. It happened pretty quick.
Q. Okay. And then after that, you were in the hospital; is that right?
A. Yes, sir.
Q. Did they take you immediately to the hospital?
A. Yes, sir. Wasn't going to.
Q. But they did?
A. Yeah. After I almost died they did.

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Q. Okay.
A. They kept telling me nothing was wrong with me. And I could feel it inside; I knew something wasn't right.
Q. Did you go to Wiregrass Medical Center?
A. Yes, sir, I did.
Q. Did you go to the emergency room?
A. Yeah.
Q. Do you remember how long you were in the hospital?
A. Which time?
Q. Immediately after you were attacked.
A. Well, first off, I caught the staph infection and they took me to the hospital and gave me some medicine.
Q. The first time you were attacked, they took you to the emergency room?
A. No, when I caught the staph infection.
Q. We'll come back to that, okay, Mr. Rudd?
A. Okay. There's a story behind it.
Q. I want to cover that, but let's stay on this topic real quick, okay?
A. Okay.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Q. How long were you in the hospital after they attacked you?
A. Two weeks. ICU.
Q. Eventually did you improve and get released?
A. Well, the day I got out of the bed and took three or four steps, they came and got me.
Q. Who came and got you?
A. The deputies. Took me back. And so here we go again. Throwed me in the holding cell, on the floor, 67 stitches. I couldn't even get up.
Q. All right, Mr. Rudd. Let's think about the question I'm asking you and, if you would, just answer that question.
Did they give you medication to take, after they released you from the hospital that time?
A. Yeah.
Q. Okay.
MR. HILL: I have what I'm marking as Exhibit 9, an Inmate Medication Log.
(Defendants' Exhibit No. 9 was marked for identification and a copy of the same is attached hereto.)

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Q. It appears to me that starting when you were there in January, and then again in February, on a daily basis you were being given medications, and you were signing off when they gave you those medications; is that correct?
A. I had medications that I was taking for other things. But what they gave me for that incident, it was Lortab 10, and then you got my Seroquel down there. That's all they give me for pain was the 10s.
Q. Okay. Would it be fair to say that the jailers in the Geneva County Jail regularly gave you medication?
A. Oh, yeah. Yeah.
Q. As prescribed to you by your doctor?
A. Right. I had been taking these medications.
Q. Okay. I'm going to move on to a different subject. If you want to take a break now, that's fine with me; if you want to keep going, we'll keep going.
A. Nope.
MR. HILL: Off the record for a second.
(An off-the-record discussion

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

was held.)

(BY MR. HILL)

Q. Let's talk about that a little bit if you don't mind, Mr. Rudd.

Just so I'm clear, what medications are you on today?

A. Seroquel, Zoloft, Vistaril, Flexeril, and Tramadol.

Q. Is that it?

A. I believe so.

Q. Okay.

A. When I go to the VA, if I can say this, they'll treat me for why I'm there. But these medications I take are just full prescriptions. They send them to me every month because I take them every day, every month, every year.

Q. Okay. We talked about the fight or the attack. And we'll come back to it a little bit in a minute. But I want to cover the other two areas that we mentioned at the beginning, and that's the staph infection. Okay?

A. Okay.

Q. And I want to be clear so I understand.

When and how did you contract the staph infection?

A. When? I believe it was the first -- the time when they busted me, they locked me up. I believe it was a couple days, I started feeling feverish. They had me on the floor. They had me on the floor, sleeping next to a solid steel rusty wall.

Q. And this was when you were first arrested in January of 2005?

A. First time.

Q. Okay. And you said you contracted it a couple of days after you were there; is that right?

A. Right.

Q. How do you know that you contracted it then?

A. Because they took me to the emergency room. I was sick: fever, high fever, chills. Took me two days to get them to take me.

Q. Okay. And when they diagnosed you with a staph infection, did they say that you got it from the jail?

A. Yeah. He said he sees it all the time. This is the doctor I'm seeing in the emergency

room. He never even examined me. He asked me a couple of questions and he said, "You've got staph infection." And that was it. No test, no nothing. He gave me medication for it, which was five of them maybe.

Q. All right.

A. Didn't help my situation, really. For a while. And then it just come back.

Q. Mr. Rudd, if I could, I want to make sure I understand.

A couple of days after you arrived in the Geneva County Jail in January of 2005, you complained to the jailers, who took you to the hospital. And the doctor diagnosed you with a staph infection, without doing any testing or anything else; is that right?

A. If I can remember it well. There should be some documents on it somewhere.

Q. And he also told you, without testing you at all, that you got the staph infection from the jail; is that right?

A. Yeah. He states to me, "I see it all the time. Nothing unusual." That's exactly what he

told me.

At that point, I didn't know what it was. I was just finding out myself. It ain't good.

Q. Answer this question only if you know: Do you know if that same doctor went to the Geneva County Jail and tested it for staph?

A. I wouldn't think so, no.

Q. Would it be fair to say the doctor guessed that you got it from the Geneva County Jail?

A. Well, he might have run some tests later. All I know is he diagnosed me with it. They wasn't going to do nothing, if I can tell you this little bit.

Q. Let's just focus on -- I'll ask the questions. And you can have all day to talk to your lawyer about other things, but I'm trying to get answers to the questions I have.

And I think my question was: Would it be fair to say that the doctor guessed that you got the staph infection from the Geneva County Jail?

A. Must have.

Q. Okay.

A. I don't know what he did.

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 57

Q. And you said that he gave you five tablets, is that what you said, to treat your staph infection? What did he give you --
A. An antibiotic.
Q. If you could -- What did he give you to treat your staph infection?
A. Antibiotic.
Q. Okay. Did you take your antibiotics?
A. Yeah.
Q. Did it help you?
A. No.
Q. Did you ask the jail staff for more antibiotics?
A. I told them I needed medicine. I reckon, I did.
Q. And what did they do?
A. Okay. My mother came to see if she could speed up the process or whatever.
Basically, they didn't want to pay for it. He asked me did I have insurance -- the judge -- and I said, "No, sir, but I have VA medical."
Q. I'm sorry, Mr. Rudd; I didn't follow you. You told -- The judge asked you this about your

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 58

staph?
A. Yeah.
Q. Okay. And you complained to him about the staph infection?
A. Yeah.
Q. And he asked you if you had medical insurance, and you said what now? You said no, but you had VA?
A. Yeah.
Q. And what did he say?
A. He just said "Well, can you bond out?" The bond was like, I think, 80,000. And I said, "No." He said, "Can you bond out at 40,000?" And I said, "No, sir." He said, "Can you bond out at $5,000?" And I said, "No, sir."
Then he looked at my mother and he said, "I'll tell you what I'm going to do: I'm going to let Dennis sign his own bond. Take him to Montgomery; get his medication," which I get for free -- "and get everything started."
Q. And is that what happened?
A. And when I got there, instead of doing all that and sending me home, they admitted me into

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 59

the hospital. That's where this month comes, that variation there. I stayed in there for a month; I went home for a month; and then they came and picked me up.
Q. Okay. Let me make sure I understand. You're talking to the judge; he's asking you about the bond amount. And then you signed your own bond. And then from there, you went to the local hospital or to the VA hospital?
A. VA hospital.
Q. VA hospital in Montgomery?
A. Yes.
Q. Did they give you the medication you needed?
A. Yeah.
Q. Okay. Did that take care of your staph infection?
A. It did until the medication run out. And then they put me back in the jail, and I come down with it again.
Q. All right. When the medication ran out, did you ask to go back to the VA hospital to get some more medication?
A. Well, it didn't run out. They sent me to

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 60

prison the next day after court.
Q. At some point, did you run out of medication for your staph infection?
A. Yeah.
Q. Why?
A. Waiting to see the doctor, I reckon. No, it wasn't. I had some from the VA.
THE WITNESS: Remember? You brought them up there.
A. I had to try to get them myself, because they didn't want to pay for them. They didn't want no part of it.
So, yeah, I done without for a few days. They didn't want to do nothing for me.
Q. Who?
A. Carl Rowe.
Q. What about the state? Did you get your medication for staph infection when you were at Kilby?
A. Yeah.
Q. Is your staph infection gone now?
A. Yeah, I reckon.
Q. Are you still taking medication for it?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 61

A. No.
Q. All right. Let's move on to the third thing real quick, the overcrowding.
Do you know how many inmates were in the Geneva County Jail during the time that you were there?
A. No. I didn't count them. But I can tell you this: There was three on the floor, and I was one of them. There's 12 bunks in there.
Q. Is the reason you think it was overcrowded because you slept on the floor; is that why?
A. Yeah.
Q. Is there any other reason why you believe that it was overcrowded at the jail?
A. Why it was overcrowded?
Q. Besides sleeping on the floor, is there any other reason why you think it was overcrowded at the Geneva County Jail?
A. Yeah. It wasn't hardly room to walk around in there. That would be crowded, wouldn't it?
Q. Besides not being able to walk around very well and sleeping on the floor, can you think of any other reasons why it was overcrowded?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 62

A. No.
Q. Okay. Want to keep going?
A. Sure.
Q. Are we still communicating clearly? Are you following my questions?
A. Yeah.
Q. Is there anything we've talked about up to this point that you feel like you didn't understand well or that you need to clarify, Mr. Rudd?
A. No. I've been as truthful as I can.
Q. I know that you have.
A. I might not answer it the way you would like to hear it; I don't know. I'm not an educated person like you are, but I'm trying to answer as much as I can with what's up here with me.
Q. That's all you can do, Mr. Rudd. I understand.
Besides your lawyer, besides him -- I don't want to know about anything you and he have talked about, not a word.
Besides him, who have you talked to about this deposition today? Have you talked to your

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 63

mother about it? or who else?
A. Yeah, my mother.
Q. Who else have you talked to about it?
A. That's it.
Q. Your mother?
A. Yeah. I live with my mother.
Q. Besides -- not including your lawyer -- did you look at any photographs or documents to get ready for today?
A. Sure.
Q. I notice you have documents in front of you.
A. Sure. My brother pulled up information on the computer about the diseases that I have and what causes them. And I didn't want to go in blind.
Q. Sure.
A. But I've got information on the mental sicknesses that I have.
Q. Okay.
MR. HILL: Now, Mr. Sawyer, can I look at what he's got in front of him right now?
MR. SAWYER: Sure you can.
Q. Do you mind if I look at some of your

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 64

papers?
A. Which ones do you want?
Q. I just want to flip through it, just to see what you've got and to see if there's something that you've used to prepare yourself for today that I might need to ask you about.
Let me give these back to you in an orderly way. Okay? And these questions are going to be all over the map, but I want to ask you about these pieces of paper as we come across them.
I see that you've got some certificates of achievement.
A. Yes, sir.
Q. What are these for?
A. Rehab in prison.
Q. And did you successfully complete rehab?
A. Yes, I did.
Q. Have you used any illegal drugs since you've been released from jail?
A. No. I learned my lesson.
Q. And when you were arrested, you were arrested for distributing methamphetamines; is that correct?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

A. What did you say? distributing?

MS. MASON: Distributing. You wasn't distributing; you were --

Q. Were you arrested for using methamphetamines?

A. Yeah.

Q. Okay. Were you using any other drugs at that time?

A. No, I don't believe I was.

Q. Okay. I'm looking here at this document, and this looks to me to be an appointment for the VA hospital.

A. Yeah.

Q. In 2005.

A. Yes, sir.

Q. Is this the appointment that we were talking about earlier that the judge and you discussed?

A. This is the appointment that I had that they wouldn't take me to, to get my medicine.

Q. And instead you went to Wiregrass Medical Center?

A. No. I done without for a few days, until my mom -- I had some old ones in Enterprise, and she

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

brought me those.

But I had this appointment like two days after they locked me up, and they wouldn't take me. And finally I just went off on them. I said, "Look, I've got to have my medication."

Q. All right. We've been over that, Mr. Rudd, and I understand.

This is a piece of paper talking about understanding Hepatitis C, correct?

A. Yeah.

Q. When did you first come down with Hepatitis C?

A. I don't know how long. I didn't catch it in the jail over there.

Q. Okay. Are you still on probation, Mr. Rudd?

A. I've got four months left; yeah.

Q. Do you report to a probation officer?

A. Yeah.

Q. Who is that?

A. David Grice, Dale County.

Q. How often do you report to him?

A. Once a month.

Q. Have you had any problems with your

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

probation?

A. Not a one at all.

Q. Okay. Now, you're paying $10 a month in restitution; is that right?

A. Yeah. Fine.

Q. Is that because of your conviction in 2005?

A. Yeah.

Q. Are you making restitution to somebody or are you making it to the state?

A. The courts.

Q. Okay. I see here your discharge papers from the Army.

A. Yeah.

Q. Were you discharged honorably?

A. I had an honorable and I had a general. I had two discharges.

Q. Okay. It says here at the bottom, Mr. Rudd, "Narrative reason for separation: Unsuitability, defective attitude, and inability to expend effort constructively." Is that correct?

A. No, I don't think that's correct. No, sir.

Q. Okay. Well, look at No. 24.

A. It says that. But like I told them then,

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

that's not right.

Q. Okay.

A. Whatever it says, it's a general discharge under honorable conditions. I have all my benefits.

Q. Okay. Do you mind if I look at the other documents you have? I don't want to get them out of order.

A. Well, they probably ain't in order like yours is.

Q. Well, that's fine. If they're not, I don't want it to be my fault.

It looks like you've got some appointments in '08 for a clinic, in April; is that right?

A. Yes. This is the VA they opened up at Fort Rucker. I went there a couple months ago, and it's a call back sheet.

Q. And this appears to be a letter from your mother. Is that to Kilby?

A. No, sir. This is the judge of Dale County and Geneva County Jail, McLaughlin. This is where I wrote to him, or my mother did. I'm sitting right with her. Like I said, I'm getting better;

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 69

but when I first got out of jail, I was really, really in a bad mental state.

But this is to the judge explaining that I was mentally disabled, what happened, and I can't work, so can I please pay you 10 or $20 a month until I can do better. And he okayed that.

Q. And, Mr. Rudd, you say that your mental illness is Post Traumatic Stress Disorder. But you also have another mental illness, do you not?

A. What?

Q. In addition to Post Traumatic Stress Disorder, do you have any other mental illnesses?

A. Schizophrenic.

Q. Did you have schizophrenia when you came to the Geneva County Jail for the first time in 2005?

A. No.

Q. Do you think that --

A. Not until after the beating.

Q. So you're saying that the beating caused you to have schizophrenia?

A. Yeah, that's what I'm saying.

Q. Are there any other documents that you have that I can look at, Mr. Rudd?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 70

A. That's it right there.

Q. Okay. Thank you. That's fine.

It sounds to me like you've seen a bunch of different doctors in the last ten years. Is that fair to say or not?

A. Since the beating I've seen, yeah --

Q. Okay.

A. -- a bunch of doctors. And I've got letters from all of them.

Q. You have letters from all of them?

A. Yeah.

Q. Where?

A. In Joe's file. I might have one or two of them in here.

MR. SAWYER: If I've got them, I'll furnish them to you.

MR. HILL: Did you say if you have them you'll send them?

MR. SAWYER: If I've got them, I'll get them to you.

MR. HILL: Okay.

Q. Did you see a doctor before 2005 for a mental illness?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 71

A. 2005?

Q. Before the attack, had you ever seen a doctor for a mental illness?

A. Yeah. Depression. Through the VA.

Q. Is that the VA in Montgomery?

A. Yeah.

Q. Okay.

MR. HILL: Can we take a short break?

(A brief recess was taken.)

(BY MR. HILL)

Q. Did the Geneva County Jail have any grievance forms you could fill out when you had concerns about different things?

A. Yes.

Q. Did you ever fill any out?

A. That's when the boy jumped on me.

Q. Did you ever fill any out?

A. Yeah. Yeah, I did.

Q. What did you fill a grievance form out about?

A. I believe it was being sick and I needed some help.

Q. And what did they do?

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 72

A. They took me to the hospital, the first time.

Q. Any other grievance forms that you filled out?

A. Grievance forms? Not that I can remember.

Q. Did you fill out any grievance forms to say that you were worried that DAP was going to attack you?

A. No. No, that was verbal.

Q. Who did you tell that you thought DAP was going to attack you?

A. I didn't say DAP; I said these guys.

Q. Who did you tell that these guys were going to attack you?

A. The guard. Her name was Marilyn. She brought the letter back to me. She throwed it at me and she said, "Sheriff said you ain't getting out. He ain't got nowhere else to put you."

Q. And did you request to be taken out of your cell block?

A. Yes.

Q. Who did you make those requests to?

A. The sheriff.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 73

Q. And what did the sheriff do?
A. He gave Marilyn the orders, she came back, told me, "Sheriff said he ain't got nowhere else to put you; you're going to have to stay right where you're at."
And then again I told the guard, Marilyn, I said, "Please don't put me back in there. I'm telling you now, they're going to jump me. They're going to jump me." And they did the very next morning.
Q. When you say "they," the ones that jumped you, did they or any of them make any threats against you before they jumped you?
A. Yeah. Not directly to me. Their cell was here and my cell was here, and there's a thin piece of steel that separates them. And I'm on this bunk, and they're right here on this side. I could hear everything they're saying.
They were talking about physically hurting me to get Carl to take me out of there so they wouldn't catch the staph infection from me. Yes.
Q. Did you ever make any requests to anybody at the county, the county commission, about what was

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 74

going on at the jail?
A. You mean the commissioners?
Q. Yes, sir.
A. No. Sheriff's as far as it made it.
Q. Did you send any requests or any grievances to anybody besides Marilyn who gave it to Sheriff Ward?
A. Uh-huh.
Q. Who? Anybody besides them?
A. No. Just Marilyn and Greg Ward. And Carl Rowe read it.
Q. How do you know he read it?
A. He told me he did.
Q. Did the sheriff tell you he read it too?
A. Yeah. Well, through her. I mean, she said, "Sheriff said he read it and said he ain't got nowhere else to put you, so I'm putting you back in there. Shut up." That's exactly the way she put it. And I said, "Please don't. There's fixin' to be a problem."
Q. You said you overheard them talking about jumping you?
A. Yeah.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 75

Q. And that was the night before?
A. They told me they was.
Q. And that was the night before they did; is that right?
A. Yeah, I believe so.
Q. Before you overheard them, had you heard any threats or anything else about you before that?
A. Yeah.
Q. Okay.
A. The whole time I was there.
Q. Who made threats to you?
A. The guys in the next cell. You've got black guys in this cell and white guys in this cell. A lot of bad feelings there.
Q. Did the threats go on for about a month before they did something?
A. No. I hadn't even been there a month.
Q. How long did the threats go on?
A. Two or three days. When I come out of ICU, they took me straight up to court, give me a fast and speedy trial, sentenced me; and the next day drove me to Kilby and throwed me out right there at the gate with 67 stiches in my belly.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 76

Q. When you were taken back from the hospital, where were you placed?
A. Second time?
Q. After you got back from -- yeah.
A. First time or second time?
Q. Second time.
A. I was placed in the holding cell on the floor.
Q. And why was that?
A. Said that's the only place he had to keep me.
Q. To keep you safe?
A. Did he keep me safe?
Q. Did he put you there to keep you safe?
A. I reckon that's what he could say. But he put me in there because he didn't like what was going on. They wanted me out of there.
Q. How do you know that?
A. Just hearing people talking in the jail, and since then.
Q. What people?
A. Well, one of the black guys that beat me up.
Q. They knew what the sheriff was --

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 77

A. I got a statement from him.
Q. You do?
A. Yes.
Q. Do you have it with you?
A. No.
Q. Where is it?
A. It's probably in my files at home.
MR. SAWYER: If you've got that, bring it into my office. I'll make a copy of it and I'll send it to this lawyer.
THE WITNESS: You might have a copy, Joe.
MR. SAYWER: I'll look in there and see. If I've got it in there, I'll send it to him.
THE WITNESS: Okay.
Q. In between the first time you went to the doctor and the second time you went to the doctor, you were released on bond at some point; is that right?
A. Uh-huh.
Q. Where did you go during that time?
A. VA.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 78

Q. Did you stay at the VA the entire time, or did you ever go home?
A. A couple weeks.
Q. You were at the VA for a couple of weeks?
A. Uh-huh.
Q. Did you go anywhere besides the VA during that time?
A. Just my mother's, where I was staying.
Q. Okay. So also your mother's? And did you get treatment during that time for your staph infection?
A. Yeah.
Q. The entire time?
A. Yeah. I believe so, yeah. I would say yeah. But I sure didn't get it from them.
Q. All right.
MR. HILL: I'd like to take just a quick break. I think I'm just about done.
(A brief recess was taken.)
MR. SAWYER: You might want to ask a few follow-ups; I want to ask him one or two questions.
MR. HILL: Go for it.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 79

BY MR. SAWYER:
Q. Dennis, do you have a file on this, your own personal file in your possession at home? or is it everything you've got right there?
A. There might be a --
Q. Let me say this --
A. I think you've got a copy of it, Joe.
Q. I want you to go into my office and sit down with Jessie, and then go home and see if there's any extra information that you have that we don't have here, okay? I want to look at it.
A. Okay.
Q. Second thing is, what doctors do you remember seeing -- not what they said or did -- for your staph infection, for the other things, for the beatings and stuff like that?
What doctors in Geneva County or in this area did you see that treated you for the injuries you sustained down there?
A. The staph infection, I don't remember. It's on the form. I can't remember the doctor's name.
Q. Okay. How about the beatings then?
A. I can't remember his name either.

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 80

Q. All right. You don't remember?
A. Huh-uh.
Q. Okay. I can get that information, but he's entitled to it.
A. Well, you've got it.
Q. Okay.
MS. MASON: You've got the medical records, the whole stack.
Q. I've got the whole stack?
A. Yeah. You've got everything I've got on me.
Q. Okay. That's fine. Thank you.
MR. SAWYER: I'll get them to you if you don't have them.
THE WITNESS: And the letter from the very one of them that beat me up, you've got that.
BY MR. HILL:
Q. Okay.
A. He felt guilty apparently. He come and found me at this camp of 3,000 people.
Q. Who?
A. One of them black boys that beat me up.
Q. Okay.
A. And he wanted to make amends. The biggest

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

one, as a matter of fact. And he asked, "What can I do to make this up to you? I feel bad about it." He said, "I shouldn't have kicked you while you was down like that and all."

And I said, "Well, let me get a statement typed up. And I want you to look at it and you read it and you sign it if it's accurate." And he did.

It states -- It don't say I did; it says inmates did beat me up, yes. And he was a witness to it. Not only was he a witness to it, he was the one that done it. And I have that. Joe's got it.

MS. MASON: Didn't you say you misplaced it one time?

THE WITNESS: That's not the paper. We're talking about another paper now, Mama.

MR. HILL: So do you have the statement?

MR. SAWYER: That's what I'm going to see.

MR. HILL: All right.

Q. We covered this, and I don't plan on going

through it again; I just want to make sure just in general, because I'm confused.

Mr. Rudd, if I can have your attention. Starting with the time that the Sailor guy cut himself all the way until the time that you were taken to the hospital for the second time, are we talking about one day? three days? a few hours? how long?

A. One day.

Q. One day. Somewhere in there you talked about him doing it again.

A. The next day.

Q. Did he do both during the same day?

A. No. The next day.

Q. So we're at two days then?

A. Yeah. Yeah. They wanted the boy to die, and I just didn't understand it. Once you get to prison, you don't do stuff like that, and I didn't realize that. I had a hard lesson to learn.

Q. I don't want to get sidetracked; I just want to talk about the basic thing, just time.

So we're talking about two days from when he first cut himself to when you were taken to the

hospital? Not one day but two days; is that right?

A. After the second time?

Q. Right. Two days?

A. I'd say one day. It was the next day.

Q. Okay. Within 24 hours?

A. Yeah, I believe so. I wasn't in that jail long.

Q. I know. The question was just whether it was 24 hours. Yes or no?

A. Yeah.

Q. Okay. I'm going to ask another question. Is it your opinion that the blood and the suicide attempt involving Mr. Sailor is what caused those guys, including DAP, to attack you, because you assisted him by putting a towel on his wrist?

A. Yeah.

Q. And the beginning of that whole thing began 24 hours before you ultimately were attacked and sent to the hospital; is that right?

A. Yeah.

Q. Okay.

A. I wouldn't think no more or less, just

speculating.

Q. That's fine. That's all I can ask. Have you understood all my questions today?

A. Yeah.

Q. Is there anything that we need to go back over again that you didn't understand or that you need to clarify?

A. I'd like to clarify about the paperwork that was stole from me.

Q. Go for it.

A. Being the one that I had the sheriff look at and then I had it notarized. It was in two copies. They made it and give me a copy and said, "Go get it signed." And I did. I come back and give them theirs back.

But anyway, Mr. DAP -- I was in prison one day, and this boy had to go to court in Geneva. They come get you, take you to court; when court's over, they bring you back.

Well, this young man had caught staph infection in Geneva. Anyway, when they come to get him, he's got a prior case to go to court on. And he come back about two weeks later. And he

said when they put him in the car, DAP was in the back seat; and he climbed in the back seat with him. And it's an hour ride to Geneva.

And this fellow told me that DAP showed him this form that's missing. Showed it to him. I said, "What did it say?" And he spit it out exactly what the letter said.

He said he was going to give it to his lawyer when he goes to trial. See, he was charged with first degree assault for what they done to me. And they had to bring him back from prison. He was already going to prison, but they brought him back to go to court on the first degree assault charges on me. So he had the paper. So that tells me he stole it out of my box and gave it to his lawyer. I don't know who his lawyer was, or if he still might have the paper.

But it, in fact, did exist; and the guard seen it. The truth is the truth. They seen the paper, read it. The lady that notarized it read it.

Q. Okay. And you say that Sheriff Ward has a copy of this?

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

A. No.

Q. No?

A. DAP stole the other copy, when they put me in the hospital after the beating. They've got a little plastic box you keep your own stuff in. It don't lock up or nothing, what few things you might have.

But when they rushed me to the hospital, I didn't get back out for two weeks. And when I was in there, DAP, not only that record, he stole a couple more legal documents that I had.

And he told the boy that rode back with him that he was going to give it to his lawyer and I wasn't supposed to be in there to start with. And that letter does exist.

Q. Okay. Is there anything else that you want to clarify?

A. No. I'd like to say I've answered all these truthfully. I'm not the greatest carrier of a time clock, but all these things, remembering these time levels or dates. But everything that I've stated was truthfully answered. I might not have it on the right date. I might be a day off

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

or a month off. I just can't remember exactly. But the fact is these things happened.

Q. Okay. Thank you, Mr. Rudd. I have no further questions.

MR. SAWYER: Thank you. Thank you for bringing him.

MS. MASON: You're welcome.

(The deposition was concluded at 3:40 p.m.)

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

C E R T I F I C A T E

STATE OF ALABAMA )

COUNTY OF JEFFERSON )

I hereby certify that the above and foregoing proceeding was taken down by me by stenographic means, and that the content herein was produced in transcript form by computer aid under my supervision, and that the foregoing represents, to the best of my ability, a true and correct transcript of the proceedings occurring on said date at said time.

I further certify that I am neither of counsel nor of kin to the parties to the action; nor am I in anywise interested in the result of said case.

[signature]

Court Reporter and Commissioner

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 1

A
able 8:19 14:1 17:21 61:21
ACCR 88:21
accurate 81:7
achievement 64:12
acting 6:2
action 4:12 88:14
Activity 4:16 31:9
actual 18:14
addition 69:11
address 12:9,15 16:5,8
administrator 35:22
admitted 58:23
ago 17:15 38:18 47:21,21 68:16
agreed 2:3,10,17 3:2 32:10
ain't 15:4,18,19 17:17,21 34:23 35:2,2,19 36:13 36:14,16 56:3 68:9 72:17,18 73:3 74:16
Alabama 1:2 2:9 5:7,15 6:2,4,7 7:2 12:11 16:5 88:3
Allen 33:23 34:1 35:9
amends 80:23
amount 17:19 59:7
ample 11:13
answer 8:19 10:10 10:11 11:12,13 22:22 26:16 27:2 51:13 56:4 62:13 62:15
answered 86:18,22
answering 10:15
answers 10:4 56:17 88:8
antibiotic 57:4,7
antibiotics 57:8,13
anybody 12:6 18:4 37:11 44:18 73:22 74:6,9
anyway 19:5 35:4 36:12 84:16,21
anywise 88:15
apart 23:10
apartment 12:12 18:12
apparently 42:6 80:18
APPEARANCES 5:1
appears 52:1 68:18
appointment 65:11 65:16,18 66:2
appointments 68:13
appreciate 19:17
approximately 32:11,12
April 68:14
arbitration 18:9
area 15:15 79:18
areas 53:19
arms 39:21
Army 17:3,4 67:12
arranged 7:7
arrangements 40:13
arrest 23:11 26:8
arrested 23:9 54:8 64:21,22 65:4
arrived 55:11
aside 20:9,10
asked 9:13 47:8 55:1 57:20,23 58:6 81:1
asking 11:10 26:20 29:1 31:18 42:8 51:12 59:6
ass 35:15
assault 44:18 85:10 85:14
assign 2:22
assisted 83:16
Atlanta 18:12
attached 7:11 21:13 24:17 25:14 27:22 28:11 31:6 51:22
attack 31:21 34:7,9 37:20 44:19 45:6 45:9,18 46:1 53:18 71:22 72:7 72:11,14 83:15
attacked 29:11 34:1 42:12 48:10,12,19 50:12,16 51:2 83:19
attacking 48:20,21 49:2
attempt 83:14
attempted 47:14
attention 82:3
attitude 67:19
ATTORNEY 5:5
ATTORNEYS 5:13
B
back 13:21 24:7 27:15,17 34:10,11 36:14 37:1 39:15 39:16 40:5,11 41:17,22 46:16,21 49:8 50:19 51:8 53:18 55:8 59:18 59:21 64:7 68:17 72:16 73:2,7 74:17 76:1,4 84:5 84:14,15,19,23 85:2,2,11,13 86:9 86:12
bad 69:2 75:14 81:2
bandage 34:20
banging 40:2 41:6
bankrupt 18:6
bankruptcy 18:8
BARBOUR 88:4
barriers 7:19,20
basic 82:21
basically 10:21 17:17 29:8 49:6 57:19
basis 52:3
bent 41:13 76:22 80:15,21 81:10
beating 8:1 30:10 30:11,16 40:2 48:2 69:18,19 70:6 86:4
beatings 79:16,22
beating/fight 30:19
Becky 15:9,14,16
bed 37:9 44:12 51:5
bedtime 14:11
began 83:18
beginning 6:8 23:5 53:20 83:18
begins 31:9
BEHALF 5:3,10
believe 9:8 18:19 28:16 42:3 47:15 53:10 54:2,4 61:13 65:9 71:21 75:5 78:14 83:7
belly 75:23
benefits 68:5
best 22:22 26:16
better 40:12 68:23 69:6
big 30:3,4,5 35:18 35:18
biggest 80:23
birth 12:17
birthday 33:11
bit 14:10 53:3,18 56:13
black 34:21 35:18 35:21,23 36:2 75:12 76:22 80:21
blame 43:22
bleeding 39:12
blind 63:15
block 37:1 72:20
blood 38:8 39:20 40:8 47:6 83:13
bond 23:16 58:11 58:12,13,14,18 59:7,8 77:19
bonded 23:20 24:6 26:4
booked 24:4
booking 4:10,11 21:15,23
bookings 22:18
bothered 42:16 43:2
bottom 28:15,18 67:17
bought 18:20
box 37:5,8 44:13 85:15 86:5
boy 19:12 34:17,23 38:7,13 39:7,19 41:18 71:16 82:16 84:17 86:12
boys 36:2,14,16 43:15 45:22 80:21
branch 17:2
break 11:16 34:6 52:18 71:8 78:18
breakfast 48:14
brief 71:9 78:19
bring 33:15 77:8 84:19 85:11
bringing 87:6
broke 49:5
broken 49:3
brother 63:12
brothers 16:13
brought 7:4 29:5,23 39:15 60:8 66:1 72:16 85:12
bulldog 47:10
bullpen 34:13
bunch 70:3,8
bunk 37:6 73:17
bunks 61:9
busted 54:3
C
C 5:11 66:9,12 88:1 88:1
call 15:21 19:10 23:19 30:16 34:8 35:7 68:17
called 20:20
calls 12:7
calmed 35:5
camp 80:19
car 85:1
care 45:13 59:15
Carl 36:1,2,4,22 40:3,11 45:12,14 60:16 73:20 74:10
carrier 86:19
case 1:5 4:12 7:3 10:2 84:22
catch 44:1 66:13 73:21
caught 50:13,18 84:20
cause 6:9 88:16
caused 34:9 69:19 83:14
causes 14:7 63:14
cell 34:11,12,12,16 37:1 38:2,4 46:22 51:9 72:20 73:14 73:15 75:12,13,13 76:7
cells 40:2
Center 50:5 65:21
Certificate 4:19
certificates 64:11
Certified 1:17 6:1 88:20
certify 6:3 88:6,13
chance 8:17
charged 22:16 85:9
charges 20:21 22:1 23:15,15 24:5,9 24:22 25:9 26:2 85:14
check 13:2

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 3

65:17
early 33:7 49:9
eat 43:23
educated 62:14
Edwards 2:8 5:6 6:7
effect 2:13
effort 67:19
eight 21:3 25:3
eights 21:1
eight-year 20:23
either 10:11 24:12 44:1 79:23
ELEY 5:12
emergency 35:5 50:7,17 54:16,23
employed 12:23
ended 20:23 21:2
ends 31:10
Enterprise 2:8 5:7 6:7 7:2 12:11 16:4 17:7 65:23
entire 78:1,13
entitled 22:21 26:21 31:8 39:4 80:4
entry 31:11 33:21 33:22
Eufaula 6:2
evening 41:10
Eventually 51:4
evidence 2:23 11:6
exact 10:18 32:5
exactly 10:6 23:4 32:22 47:22 55:23 74:18 85:7 87:1
examination 4:2 6:9 6:21
examined 6:13 55:1
Excuse 9:9
exhibit 7:8,9 21:10 21:11 22:14,15,16 24:4,6,14,15,20 25:12,17 27:20 28:2,9,14 31:1,4,8 31:16,17 32:1 33:21 51:19,20
Exhibits 4:6 21:8
exist 85:18 86:15
existed 44:16
expend 67:19
Expires 88:21,23
explain 9:18
explained 10:20
explaining 69:3
extra 79:10
ex-wives 14:19
F
F 88:1
fact 81:1 85:18 87:2
fair 25:5,8 26:10 27:5 29:21 52:11 56:8,19 70:5
Faith 12:11
family 16:15
far 46:7 74:4
fast 75:20
fault 68:12
favor 8:5 11:9,10
February 26:5 27:6 30:20 31:12,22 32:11 52:2
feel 50:3 62:8 81:2
feeling 54:4
feelings 75:14
fellow 18:6 19:1 35:6 38:9 42:13 43:23 85:4
felt 80:8
fever 54:17,17
feverish 54:5
fight 29:10 30:9,15 31:21 33:23 34:7 34:9 37:20 42:12 48:9 53:17
figured 13:23 49:7
file 37:5 70:13 79:2 79:3
filed 10:2 13:4,20 17:22 18:8
files 37:10 77:7
filing 3:3
fill 71:12,15,17,19 72:6
filled 72:3
finally 42:5 49:14 66:4
find 14:4
finding 56:3
fine 24:10 33:18 52:19 67:5 68:11 70:2 80:11 84:2
finish 11:11 25:7
first 6:13 20:22 22:3 26:1 29:10 30:15 38:11 43:5 44:10 46:12,18,21 50:13,16 54:2,8 54:10 66:11 69:1 69:15 72:1 76:5 77:17 82:23 85:10 85:13
fit 11:14
five 18:14 21:1 41:16 49:10 55:5 57:1
fixin 74:20
Flexeril 9:7 53:7
flip 64:3
floor 51:10 54:5,6 61:8,11,16,22 76:8
focus 56:14
follow 9:11 11:21 57:22
following 6:10 8:7 62:5
follows 6:14
follow-ups 78:21
food 38:5 39:17
foot 49:10
force 2:13
foregoing 6:5 88:7 88:10
form 2:20 37:10,11 71:19 79:21 85:5
forms 71:12 72:3,5 72:6
Fort 68:15
found 80:19
four 8:14 21:1 22:1 26:11,17 42:5 47:21 51:6 66:16
four-month 26:10
Fowler 15:6,6
freaked 47:6
free 58:20
friends 43:3
front 63:11,21
full 2:14 11:23 19:6 53:14
fully 8:20
furnish 39:5 70:16
further 2:10,17 3:2 87:4 88:13
G
gal 49:9
gate 75:23
general 67:15 68:3 82:2
generally 31:21
Geneva 1:10 7:1,5 16:12 20:10 23:20 26:9 27:7 32:11 52:12 55:12 56:5 56:9,20 61:5,18 68:21 69:15 71:11 79:17 84:17,21 85:3
Georgia 16:1 18:12
getting 13:2 48:14 68:23 72:17
give 11:12 19:16 26:21 32:9 37:11 37:14,16 45:22 51:14 52:9 57:3,5 59:13 64:7 75:20 84:13,15 85:8 86:13
given 10:18 52:3 88:12
glitch 19:8
go 8:14 9:22 17:6,7 19:2 23:6 27:15 27:17 30:12 38:2 48:5 50:5,7 51:9 53:12 59:21 63:14 75:15,18 77:22 78:2,6,23 79:8,9 84:5,10,14,17,22 85:13
goes 7:21 8:5,6 9:16 42:1 46:7 85:9
going 22:19 23:5 24:13 27:15 34:22 35:1,1,2,12 36:5 36:14,14,16 38:1 40:13 44:18 45:14 45:18 46:1 49:21 52:17,19,20 56:12 58:17,17 62:2 64:8 72:7,11,13 73:4,8,9 74:1 76:17 81:20,23 83:12 85:8,12 86:13
good 15:4 56:3
great 28:22
greatest 86:19
Greg 1:11 7:1,5 74:10
grew 13:16
Grice 66:20
grievance 71:12,19 72:3,5,6
grievances 74:5
ground 10:1
grounds 2:22
groups 7:4
guard 49:8 72:15 73:6 85:18
guess 26:19
guessed 56:8,19
guilty 80:18
guy 19:13 35:23 40:11 45:12 47:5 82:4
guys 34:20,21 35:21 72:12,13 75:12,13 75:13 76:22 83:15
H
hair 47:5
Halcyon 5:14
half 12:16 20:7 21:4
halfway 19:7
happen 32:21 35:2 35:3
happened 19:22 22:20 32:4,8,20 33:1,4 34:4,8 37:23 39:17 40:7 41:2,12 46:14 47:17,18 49:14 58:21 69:4 87:2
happening 8:11
hard 9:18 26:17 82:19
head 10:14,14 32:4
headed 23:4
heading 10:1
hear 7:16 9:17 15:17 62:14 73:18
heard 15:16 75:6
hearing 7:18 18:9 76:19 88:12
held 53:1
help 10:15 21:6 22:9 32:18 42:22 43:6 46:20 55:7 57:10 71:22
helpful 10:10
helps 30:23 31:1,14
hepatitis 43:19 66:9 66:11
hereto 7:12 21:14 24:18 25:15 27:23 28:12 31:7 51:23
He'll 40:23

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 5

35:19 74:2,15
means 88:9
measles 45:2
medical 50:5 57:21 58:6 65:20 80:7
medication 4:17 7:15 8:21 9:1,3 13:23 14:6 32:19 51:14,19 52:13 55:4 58:19 59:13 59:17,20,22 60:2 60:18,23 66:5
medications 9:10 52:3,5,6,16 53:5 53:14
medicine 14:11 50:15 57:14 65:19
memory 32:1,3,23 33:3,6
mental 14:5 30:7 41:21 63:17 69:2 69:7,9,12 70:23 71:3
mentally 69:4
mentioned 53:20
methamphetamines 22:3 64:22 65:5
MIDDLE 1:2
military 16:23
milligrams 9:7
million 18:21
mind 13:21 31:11 53:4 63:23 68:6
mine 19:6,15,16 44:8
minute 9:22 27:2,10 28:21 53:19
misplaced 81:15
missing 30:3 85:5
misunderstood 43:17
mixed 47:19
mom 65:23
money 19:5,13
Montgomery 5:15 58:19 59:11 71:5
month 22:10 23:10 23:12 32:8,9 53:15,16 59:1,2,3 66:22 67:3 69:5 75:15,17 87:1
months 21:3 23:18 26:11 66:16 68:16
Morgan 14:20
morning 39:18 73:10
mornings 14:12
mother 5:19 16:2 16:11 23:19 57:17 58:16 63:1,2,5,6 68:19,22
mother's 16:8 78:8 78:9
move 48:9 52:17 61:2
N
N 2:1
name 6:23 11:23 15:1,3,12 22:11 35:23 38:13 41:23 72:15 79:21,23
names 12:4 14:19 15:4
Narrative 67:18
necessary 2:18
need 7:15 8:4 11:16 16:19 19:17 27:10 62:9 64:6 84:5,7
needed 57:14 59:13 71:21
neither 47:9 88:13
never 41:22,23 55:1
Nickname 35:11
nicknames 12:6
night 9:16 14:13 36:10 37:19 38:7 39:7,13 41:5 42:11 43:5,9 46:12 47:4 75:1,3
nightmares 9:17
nine 21:3
Noakes 1:16 2:6 6:1 88:19
nod 10:14,14
Nope 52:21
notarized 36:21 37:2 40:22 45:20 45:21 46:5 84:12 85:20
notice 3:3 4:9,15 7:6 63:11
number 1:5 4:2 12:21
O
O 2:1
oath 11:3
obituaries 38:15 42:4
obituary 39:8
objections 2:18,21
obtain 16:18
obviously 19:21
occasions 23:10
occur 34:9
occurred 7:23 48:2
offered 2:23
office 7:3 77:9 79:8
officer 66:17
Offices 2:7 6:6
off-the-record 52:23
Oh 9:2 13:8 33:2 52:14
okay 8:12,16 9:6 10:17,20 11:1,23 12:3,6,9,14,17 14:21 15:7 16:2,6 17:6,11,20 19:4 20:7,9 21:5 22:23 23:3,7,14 24:3 25:5 26:12 27:13 28:5,17,20 29:13 30:2,11,14 32:17 32:19,23 33:20 34:7 35:12 36:11 37:19,23 38:21,22 39:1,5,6,10,16 41:2,12 42:10 43:5,9,16 44:11 44:15 46:6,12,15 46:21 47:2,13,16 48:5,15,19 49:5 49:16 50:1,19,20 50:22,23 51:17 52:11,17 53:11,17 53:21,22 54:11,19 56:22 57:8,17 58:3 59:5,15 62:2 63:19 64:8 65:7 65:10 66:15 67:3 67:11,17,22 68:2 68:6 70:2,7,21 71:7 75:9 77:16 78:9 79:11,12,22 80:3,6,11,17,22 83:6,12,22 85:22 86:16 87:3
okayed 69:6
old 49:9 65:23
once 15:21 66:22 82:17
ones 14:12 64:2 65:23 73:11
open 34:13
opened 68:15
opinion 83:13
oral 6:9
order 29:13 46:14 68:8,9
orderly 64:7
orders 73:2
overcrowded 34:14 61:10,14,15,17,23
overcrowding 29:20 61:3
overheard 74:21 75:6
owe 18:7
owner 18:13,19
P
P 2:1
PAGE 4:2
paid 19:6
pain 52:10
paint 13:10
painter 17:11
painting 13:18
paper 36:18 38:15 38:19 40:21 64:10 66:8 81:16,17 85:14,17,20
papers 64:1 67:11
paperwork 37:6 84:8
paranoid 7:22
paraphernalia 22:5
parking 19:12
part 14:4 23:11 43:17 60:12
parties 2:4,21 88:14
pay 19:6 23:21 57:19 60:11 69:5
paying 67:3
Payne 33:23 34:1,9 35:9
penitentiary 20:4
people 17:16 44:1 48:7 76:19,21 80:19
period 26:10 47:23
permission 16:17
person 34:1 62:15
personal 79:3
photographs 63:8
physically 73:19
picked 24:8 26:1,4 34:11 59:4
piece 66:8 73:16
pieces 34:6 64:10
pill 14:7
pin 30:18
place 30:19 31:22 76:10
placed 76:2,7
plaintiff 1:8 5:3 18:2
Plaintiff's 5:19
plan 81:23
plastic 86:5
plea 25:6
please 11:17,23 24:19 27:11 29:9 40:14 42:20 69:5 73:7 74:19
point 7:20 8:6 9:14 16:16 25:16 26:4 39:1 43:5,9 46:16 56:2 60:2 62:8 77:19
Pointe 5:14
poodle 47:10
possession 20:16 22:4,5,6 26:3 79:3
Post 7:21 30:7 69:8 69:11
prejudiced 35:19
prepare 64:5
prescribed 52:15
prescriptions 53:14
PRESENT 5:18
pressure 34:19
pretty 49:15
price 19:6
prior 3:1 84:22
prison 25:18 60:1 64:15 82:18 84:16 85:11,12
Prisoner's 4:16 31:9
probably 8:10 25:16 32:7 68:9 77:7
probation 66:15,17 67:1
problem 74:20
problems 66:23
Procedure 6:4

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 7

sir 28:8 34:3 36:17 43:1 49:18,21 50:6 57:21 58:14 58:15 64:13 65:15 67:21 68:20 74:3
sisters 16:13
sit 32:5 79:8
sitting 68:22
situation 49:11 55:7
sleeping 54:6 61:16 61:22
slept 61:11
sliced 34:17
slinging 40:1
smart 35:15
Social 13:3
solid 54:6
somebody 38:5 67:8
soon 19:11
sorry 21:19 32:18 32:20 57:22
sound 30:20
sounds 70:3
South 2:8 5:6 6:7
SOUTHERN 1:3
space 21:20
speculate 26:13,20
speculating 84:1
speed 57:18
speedy 75:21
spent 27:8
spit 32:5 85:6
split 21:2
stack 80:8,9
staff 57:12
staph 29:18 35:17 36:23 43:19 44:5 44:9,22,23 45:1,2 45:8 50:13,18 53:21 54:1,20 55:2,15,20 56:6 56:20 57:2,6 58:1 58:4 59:15 60:3 60:18,21 73:21 78:10 79:15,20 84:20
start 10:1 13:12 86:14
started 34:3 35:6 41:7,14,17 42:17 48:23 54:4 58:20
starting 23:5 52:1 82:4
starts 40:1 46:22
state 11:23 20:3 60:17 67:9 69:2 88:3
stated 16:4 43:18 46:3 86:22
statement 43:10,13 43:16 44:17,20 45:4,5,7,11,18 46:1 77:1 81:5,19
states 1:1 55:22 81:9
stay 8:22 50:21 73:4 78:1
stayed 41:5 48:3 59:2
staying 78:8
steel 54:6 73:16
stenotype 88:8
step 16:9
steps 51:6
stiches 75:23
STIPULATED 2:3 2:10,17 3:2
stipulation 6:5
stipulations 6:17
stitches 51:10
stole 37:4,21 84:9 85:15 86:3,10
stolen 46:11
stomping 48:23
stood 49:11
stop 8:10 49:13
stopped 49:14
story 50:20
straight 75:20
Street 2:8 5:6 6:7 12:11
Stress 7:22 30:8 69:8,11
strike 16:19
stronger 14:10
stuff 40:1 79:16 82:18 86:5
stumped 26:23
subbed 18:11,13 19:12
subject 52:18
submit 7:8
subpoenaed 19:1
substance 22:4,17 26:3
successfully 64:16
sued 18:3,4 19:13 19:20
suffered 8:1
suicide 47:14 83:13
suits 18:1
Summary 4:12
supposed 86:14
sure 8:17,19 13:17 16:11,20 17:22 19:17 22:8 24:1 25:22 27:1 29:3 39:6 48:7 55:9 59:5 62:3 63:10 63:12,16,22 78:15 82:1
sustained 79:19
sworn 6:13 10:5
T
T 2:1,1 88:1,1
tablets 57:1
take 10:13,13 11:7 14:1,10,12,13 24:19 27:2 34:21 34:22 35:13 36:4 36:6,7 40:14 41:15 45:10,13,14 45:19 47:8,8,9 49:19 51:14 52:18 53:14,15 54:18 57:8 58:18 59:15 65:19 66:3 71:8 73:20 78:17 84:18
taken 2:6 7:14 43:6 71:9 72:19 76:1 78:19 82:6,23 88:7
talk 27:13,14 28:20 30:11,15 53:3 56:15 82:21
talked 24:5,23 26:2 53:17 62:7,20,22 62:23 63:3 82:10
talking 7:13 8:9 11:3,8 22:15 27:17 32:13 33:22 44:11 46:10 48:4 59:6 65:16 66:8 73:19 74:21 76:19 81:17 82:7,22
tall 49:10
Tampa 15:18
tearing 46:22
teenager 13:13
tell 9:5 25:21 29:9 38:20,21 39:3 40:16,23 46:13 56:12 58:17 61:7 72:10,13 74:14
telling 35:19 50:2 73:8
tells 85:15
ten 15:18 17:18 25:3 70:4
test 55:3
tested 56:6
testified 6:14
testimony 1:19 10:5 88:11
testing 55:15,19
tests 56:10
Thank 70:2 80:11 87:3,5,5
theirs 43:21 84:15
thereto 3:1 88:8
they'd 49:7
thin 73:15
thing 7:17 20:11,14 29:10,12,17,17,20 30:3,5 40:22 41:7 42:20 61:2 79:13 82:21 83:18
things 10:1 21:5 29:4,8,22 30:4,5 30:12 52:7 56:16 71:13 79:15 86:6 86:20 87:2
think 20:16 24:1 26:11 27:10 32:10 33:8 38:12 40:6 48:1 51:11 56:7 56:18 58:12 61:10 61:17,22 67:21 69:17 78:18 79:7 83:23
thinking 30:6,6
third 29:20 61:2
thought 72:10
threats 73:12 75:7 75:11,15,18
three 14:18 29:8,14 29:21 30:4,12 34:20 35:18 41:13 48:2 51:6 61:8 75:19 82:7
throwed 51:9 72:16 75:22
tied 34:19
Tiffany 15:13,14,20 15:21
time 2:22,23 11:13 13:15,17 14:4,8 17:14 18:5 20:4,9 20:11 24:2,19 26:7 27:8,8,18 36:15 38:10,11,12 39:12 41:10,20 46:18,19,21 48:1 50:11,16 51:15 54:3,10,22 55:23 61:5 65:8 69:15 72:2 75:10 76:3,5 76:5,6 77:17,18 77:22 78:1,7,10 78:13 81:15 82:4 82:5,6,21 83:3 86:20,21
timeline 42:8
times 13:19 14:2,16 18:14 20:12 48:2
tired 14:8
today 10:22 11:4,21 53:6 62:23 63:9 64:5 84:3
Todd 41:23
told 23:19 34:21,22 35:13,18,21 36:4 36:17 38:1,2 40:12,14 45:12 55:19 56:1 57:14 57:23 67:23 73:3 73:6 74:13 75:2 85:4 86:12
topic 50:22
towel 34:19 35:14 42:22 83:16
town 18:11
trailer 12:13
Tramadol 9:8 53:8
transcribed 88:9
transcript 88:11
transcription 88:10
trap 30:2
Traumatic 7:21 30:8 69:8,11
tray 48:14
treat 53:13 57:2,6
treated 79:18
treatment 78:10
trial 2:22 11:4,5 75:21 85:9
trick 26:14 28:6
tried 13:19 18:5 19:15 39:21 42:13

2100 Third Avenue North, Suite 960, Birmingham, Alabama 35203
1-800-888-3376

2005 8:2 21:16 25:8 26:1 27:6,6 30:20 31:10,10,23 32:12 33:5 54:9 55:12 65:14 67:6 69:15 70:22 71:1
2008 2:9
203 2:8 5:6 6:7
21 4:10,11
24 4:12 30:20 67:22 83:6,10,19
24th 31:12,23
25 4:13
262-1850 5:16
27 4:14
28 4:15

3

3 4:11 21:9,11 22:14,16 24:6
3,000 80:19
3:40 87:10
30 49:4
31 4:16
334 5:8,16
347-6447 5:8
36124 5:15
36330 2:9 5:7 6:8 12:11
3914039 12:22

4

4 4:12 24:14,15,20
40,000 58:13

5

5 4:13 25:12,17
51 4:17

6

6 4:14 27:20 28:2 31:10
6th 21:16
6-78 4:3
625 12:11
67 51:10 75:23

7

7 4:9,15 28:9,14
7475 5:14
78 17:5
79 17:5
79-80 4:4

8

8 4:16 31:1,4,8,16 33:21
80 17:5
80,000 58:12
80-87 4:3
800 9:7
81 17:5
88 4:19

9

9 4:17 51:19,20
9th 17:10

# Exhibit E
# Geneva County Booking Sheet dated January 6, 2005

#21

# GENEVA COUNTY JAIL

## BOOKING SHEET

Date 1-6-05 Time 7:10 P

Name Russ Dennis D
(LAST) (FIRST) (MIDDLE)

Alias

Date of Arrest 1-6-05 Social Security No. 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

Race W Sex M Age 44 Eyes BRO Hair BRO

Ht. 6' Wt. 160 DOB 1-12-60 Photo X F.P. X

Address 225 Faith Enterprise
(STREET) (APT.) (CITY) (STATE) (ZIP)

Telephone 308-9415 I.D. No.

NCIC Check

Next of Kin Relationship

Address
(STREET) (APT.) (CITY) (STATE) (ZIP)

Charge Man. meth 1st Bond Charge Poss. Precur. Chem. Bond

Charge Poss Cont Sub Bond Charge Bond

Charge Poss. Drug Par Bond Charge Bond

ARRESTING OFFICER Henderson
(PLEASE PRINT)

Signature

AGENCY

BOOKING OFFICER John Robinson
(PLEASE PRINT)

RELEASE INFORMATION

I have received all properties taken from me by the Geneva County Sheriff's Department.

[signature]
Signature of Person Released

Date of Release 1-11-05 Time 5:05 pm. Type of Release Judge Fleming

Marilyn Flapp
Signature of Releasing Officer

P.O.E. Self

OCCUPATION

P.O.B. Coffee

HOLD

WARRANT #

WARRANT #

WARRANT #

WARRANT #

# BOOKING SHEET

Inmate Name ______________________ Date ______________ Time __________

HEALTH SCREENING FORM

1. Have you ever had or been treated for: (mark box if answer is yes)

- ☐ a. Asthma
- ☐ b. Heart Trouble
- ☒ c. Hypertension
- ☐ d. Diabetes
- ☐ e. Epilepsy or Seizure
- ☐ f. Drug Addiction
- ☐ g. Alcoholism
- ☒ h. Mental Illness
- ☐ i. Venereal Disease
- ☐ j. Tuberculosis
- ☐ k. Ulcer
- ☐ l. Faintly of recent head injury
- ☐ m. Hepatitis

If any response was yes, please explain and give date of last treatment. [signature] ______________________

2. Are you allergic to anything? NO If yes, what? ______________________

3. Have you ever been determined to be HIV positive? No If yes, when? ______________________

4. Are you currently taking any prescription medication? No If yes, what? ______________________ For what? ______________________

5. Does the inmate require a special diet prescribed by a physician? No If yes, what? ______________________ For what? ______________________

6. Do you have any other medical or mental problem we should know about? No If yes, what? ______________________

# Exhibit F
# Geneva County Prisoner Activity Sheet regarding Dennis Rudd

GENEVA COUNTY JAIL

Prisoner's Activity Sheet

| DATE | Prisoner's Name: Dennis Rudd |
|---|---|
| 1-6-05 | 55 Spec. At I Z Zinger HGNL Seg. Placed LS - Booked Man Meth 1st |
| 1-7-05 | AR 3414 - [illegible] - Poss. Cont Sub - Poss Drug PAR Poss. Precur. Chem. |
| 1-7-05 | Manf. Meth $25,000.00 Changed to 2,500.00 |
| | Poss Cont Sub 2500.00 |
| | Poss Precur Chem 2,500.00 |
| | Poss Drug PAR 1,000.00 |
| 8-05 | Sub was to ER and was diagnosed w/ Staff infection. |
| 1-10-05 | 1st Ap Bond was Changed on Manf. Meth from 25,000 to 2,500.00 Total Now is 8,500.00 |
| 1-10-05 | Jude Fleming said subject could sign his own Bond, so he could go to VA Hospital, then return to jail to see CRO. Judge Fleming Called Back and Said it would be Wed before he could Bond out, Subject's Mother could not take him to VA until then |
| 1-11-05 | Subject was released to go to VA Hosp |
| 1-13-05 | Sub kept by VA Hosp Per Mother |
| | Note on Radio Per [illegible] |

GENEVA COUNTY JAIL
Prisoner's Activity Sheet

| DATE | Prisoner's Name: DENNIS Donald Rudd |
| --- | --- |
| 15:40 | Subject Arrested by 3-4-05 FTA MANF CONT Sub. |
| 02-24-05 0600hrs | Subject involved in fight w/ David Glenn Payne (DAP) on Left Side — Complaining of pain to rib area on left side ~ Transported to Emergency Room by J-32 ~ X-Rayed ~ given pain Medicine — — while being wheeled to exam room (Sinagra) subject appeared to have come out of seizure — returned to ER by R/N — Doc Ricard began a series of I-V's etc — J-32 relieved by J-34 @ 8:30 AM |
| 2-27-05 | @ 2:30 - J-39 called ICU to [illegible] check on Mr. Rudd They advised me that his condition was improving and would probly go to a Regular Room monday. I advised JA-1 of this morning - I advised [illegible] He said let them know to call by link - He said let them know to call us and advised us what Room he would be in. |
| 3-8-05 | SUBJ. BACK FROM HOSP. PLACED IN H/C |
| 3-11-05 | Send To DOC - 8 years - all [illegible] Money |

# Exhibit G
# Geneva County Booking Sheet dated February 10, 2005

# GENEVA COUNTY JAIL

# BOOKING SHEET

Probation Check ____________

Warrant Book ____________

Date 2-10-05 Time 1540

Name Rudd (LAST) DENNIS (FIRST) DONALD (MIDDLE)

Alias ____________

Date of Arrest 2-10-05 Social Security No. 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

Race W Sex M Age 45 Eyes Brown Hair Brown

Ht. 6' 0" Wt. 160 DOB 01-12-60 Photo ____________ F.P. ____________

Address 425 Faith St (STREET) (APT.) Enterprise (CITY) AL (STATE) (ZIP)

Telephone 334-308-9415 I.D. No. ____________

NCIC Check ____________

Next of Kin ____________ Relationship ____________

Address ____________ (STREET) (APT.) (CITY) (STATE) (ZIP)

| Charge | Bond | Charge | Bond |
|---|---|---|---|
| FTA- unlawful Consub Manf | | | |
| | | | |
| | | | |

ARRESTING OFFICER David Hall (PLEASE PRINT)

Signature ____________

AGENCY ____________

BOOKING OFFICER William T. Owens (PLEASE PRINT)

RELEASE INFORMATION

I have received all properties taken from me by the Geneva County Sheriff's Department.

[signature]
Signature of Person Released

Date of Release 3-11-05 Time 1030 Type of Release ROR

[signature]
Signature of Releasing Officer

P.O.E. Unemployed

OCCUPATION

P.O.B. Coffee Co

HOLD

WARRANT # ____________

WARRANT # ____________

WARRANT # ____________

WARRANT # ____________

# BOOKING SHEET

Inmate Name DENNIS Donald Rudd Date 01-10-05 Time 1540

HEALTH SCREENING FORM

1. Have you ever had or been treated for: (mark box if answer is yes)

- [ ] a. Asthma
- [ ] b. Heart Trouble
- [x] c. Hypertension
- [ ] d. Diabetes
- [ ] e. Epilepsy or Seizure
- [x] f. Drug Addiction
- [ ] g. Alcoholism
- [x] h. Mental Illness
- [ ] i. Venereal Disease
- [ ] j. Tuberculosis
- [ ] k. Ulcer
- [ ] l. Faintly of recent head injury
- [x] m. Hepatitis

If any response was yes, please explain and give date of last treatment. ______

2. Are you allergic to anything? No If yes, what? ______

3. Have you ever been determined to be HIV positive? No If yes, when? ______

4. Are you currently taking any prescription medication? No If yes, what? ______ For what? ______

5. Does the inmate require a special diet prescribed by a physician? No If yes, what? ______ For what? ______

6. Do you have any other medical or mental problem we should know about? No If yes, what? ______

# Exhibit H
# Statement of Robert Owen

Feb 24, 2005

At 5:50 AM, February 24, 2005, I, Robert Owens, Jailer, Geneva Co. Sheriff's Department, entered the cat walk on the left side of Geneva Co Jail to hand out Inmate Medication(s).

At this time, David Allen Payne (AKA DAP) and Dennis Rudd askes for Request forms, Total of 6 between them. Upon looking @ form rack in the hall way, I discovered non were available and copies would have to be made. Both inmates were advised they would get copies asap.

I returned to booking area of jail where I made (6) copies, Giving them to Ms. Amber Paul, Matron, Geneva Co Jail to give out while breakfast trays were given out on left side.

At approx 6:00 A.M., Ms Paul & Trustees Shoute That a fight had broken out on the left side. I grabbed our Freeze +P an preceed to the left side. Upon arrival, Ms Paul had unlocked the cell door to admit the Trustees, I continued down the cat walk to investigate.

Upon arrival, DAP & Rudd advised they had an argument over request forms, a fight broke out, with Rudd suppose being slammed to the floor, and according to Bole (Trustee) Kicked while down.

Mr Rudd advised me he need Medical attention due to severe pain on left side. I suspected broken ribs. I advise Rudd to sit on his bunk until arrangement(s) could be made.

I returned to Booking area, Called Carl Rowe, Jail Administrator and informed him of situation. He advised if Condition(s) of Redd worsen to take him to the Emergence Room of Wiregrass Hospital.

I returned to The left side, Checke Mr. Redd, who was in extrem pain. I remove him from The left side, aided by trustees, placed him in County Vehicle & Transported to the Emergency Room.

Prior to my being relieved of duty, by J-34 Trey Langham @ 8:30 AM, subject had been given (2) pain shots, a portable X-Ray, & was examined by Dr. McCleod, who ordered a Sona-Gram -

Upon transporting by Wheel Chair to an exam-room, Mr. Redd had either a mild seizure, or passing out from pain or Medication. He was rushed back to E.R. by me and the Nurse in Charge.

This is where I was relieved @ the Hospital and all statement(s) are true to The best of my knowledge

Robert Owens

# Exhibit I
# Statement of Richard Bove

I Richard Bove on the morning of Feb 24 2005 At 6:00 AM observed Robert owens give Amber pa[illegible] A stack of Request slips to pass out on the left side of the Jail, At this point she gave them to David payne and she said to pass them out to the other inmates. At that time Dennis Rudd ask David payne for two of them an[d] he said no to get his own and proceeded to push him and punch him to the Floor, screaming for him to get his Ass up and Figh[t]. As I was watching in the window he kicked him several times while he was on the Floor covering himsel[f] up! At that point nathan morri[s] covered up the window so I could no longer see Anything.

Richard W Bove

# Exhibit J
# Statement of Blake Enfinger

On the morning of Feb. 24 at approximatly 6:00 am
I was witness to a fight on the left side
involving David Payne & Dennis Rudd where Mr. Payne
appeared to be the aggressor as he threw Mr. Rudd
to the ground & then proceeded to kick him in the
abdomen

Blake Enfinger

# Exhibit K
# Affidavit of Jowel S. Nunn

JN

STATE OF ALABAMA
COUNTY OF BARBOUR

AFFIDAVIT

JOWEL S. NUNN AIS# 204088, an inmate in the custody of the Alabama Department of Corrections, who personally appeared before the undersigned authority in and for said county and state, Jowel S. Nunn, who being first duly sworn makes this affidavit pursuant to the provisions of the Alabama Code 1975 and Federal Rules of Civil Procedure says the following:

My name is Jowel S. Nunn AIS# 204088 and i am a resident of Geneva County Alabama who is of sound mind and who is an adult of mature age (21 Years) and thus hereby give lawful notice that on or about the 24 day of Feb., 2005 I was a pretrial detainee being held in the custody, care and control of Gregg Ward, Geneva County Sheriff and at which time i am a witness to the fact that Dennis Rudd AIS# 239596, another pretrial detainee, was brutally beaten by other inmates of the jail and who also contracted staph infection due to the deplorable conditions of the Geneva County Jail.

I hereby declare under the penalty of perjury that the facts stated in this affidavit are true and correct to best of my knowledge, understanding and belief.

SWORN AND SUBSCRIBED BEFORE ME THIS 10th DAY OF May, 2006

Carolyn R. Abercrombie
NOTARY PUBLIC

My Commission Expires August 18, 2007
MY COMMISSION EXPIRES

Jowel S. Nunn #20488
JOWEL S. NUNN