IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DENNIS RUDD,                              )
                                          )
            Plaintiff,                    )
                                          )  CASE NO. 1:06-CV-233-WKW
     v.                                   )
                                          )
GENEVA COUNTY COMMISSION, *et al.*,       )
                                          )
            Defendants.                   )

## MEMORANDUM OPINION AND ORDER

Before the court are two motions for summary judgment.  One was filed by Defendant

Geneva County Commission (Doc. # 39), and the other was filed by Defendant Sheriff Greg

Ward (Doc. # 41).[1]  The motions are fully briefed (Docs. # 40, 42) and are accompanied by

evidence (Doc. # 43), including deposition transcripts and other exhibits.  Although Plaintiff

Dennis Rudd ("Mr. Rudd") failed to respond to the motions, notwithstanding the court's

Order directing him to do so (Doc. # 26), the court conducted an independent review of the

record in light of the familiar standard governing summary judgment.  Having done so, the

court finds that the material facts are undisputed and that Defendants' motions for summary

judgment are due to be granted.

---

[1] The court refers to Defendants individually as the "Commission" and "Sheriff Ward" and
collectively as "Defendants."

## I. JURISDICTION

The court properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). Personal jurisdiction and venue are not contested, and the court finds adequate allegations of both.

## II. STANDARD OF REVIEW

"[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). The court, however, "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.*

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. "[T]he court must view all evidence and make all reasonable inferences

2

in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

### III.  FACTS AND PROCEDURAL HISTORY

Construing the evidence in the light most favorable to Mr. Rudd, the material facts are as follows. Mr. Rudd was incarcerated at the Geneva County Jail ("Jail"), beginning January 6, 2005, after his arrest on charges of manufacturing and possessing methamphetamine. This lawsuit focuses on the conditions of Mr. Rudd's confinement, a staph infection Mr. Rudd contracted, the medical treatment he received while in the Jail, and an attack he endured from his cell mates. The Commission is sued as the governmental entity responsible under state law for adequately funding and maintaining the Jail, and Sheriff Ward is sued as the party responsible under state law for the Jail's general supervision and control.

During Mr. Rudd's incarceration, there were more inmates than permanent bunks; consequently, Mr. Rudd and two other inmates had beds on the floor,[2] and his bed was next to "a solid steel rusty wall." (Pl. Dep. at 54, 61 (Defs. Ex. D); *see also* Pl. Dep. at 44.) On January 8, 2005 (his second day of incarceration), having complained of a fever, Mr. Rudd was taken to a hospital emergency room, where he was diagnosed with a staph infection. (Pl. Dep. at 22-23, 26, 50, 54-55; Prisoner Activity Sheet (Defs. Ex. F).) After this diagnosis, Mr. Rudd was permitted to sign his own bond, so that he could be released and obtain further care at a Veteran Administration's hospital. (Ward Dep. at 35 (Defs. Ex. A); Pl. Dep. at 23-24, 57-58, 77; Jan. 6, 2005 Booking Sheet (Defs. Ex. E); Prisoner Activity Sheet.) Mr. Rudd remained hospitalized for at least two weeks before being discharged at which time he remained at home. (Pl. Dep. at 59, 78.)

On February 10, 2005, Mr. Rudd failed to appear in court on the methamphetamine charges and, thus, again found himself incarcerated in the Geneva County Jail. (Prisoner Activity Sheet at 2; Feb. 10, 2005 Booking Sheet at 1 (Defs. Ex. G).) Mr. Rudd's cell mates told him, "We don't want you in here" because "you've got staph infection."[3] (Pl. Dep. at 35.)

---

[2] Mr. Rudd's precise sleeping situation is unclear from the record, but it appears that Mr. Rudd is complaining that, at least for a time, he had to sleep on a mattress on the floor, rather than in one of the permanent bunks. His testimony, though, is conflicting. (*See, e.g.*, Pl. Dep. at 37 (testifying that he slept in a "bunk" and stored a box with his paperwork underneath his "bunk"); *see also* Pl. Dep. at 44.)

[3] There is no evidence that Mr. Rudd still was suffering from a staph infection during his second stay at the Jail.

On February 24, 2005, Sheriff Ward met with Mr. Rudd, who showed him a letter,[4] but refused to move him to a different cell for two reasons.[5]  First, Sheriff Ward said there was "nowhere else to put" him.  (Pl. Dep. at 36.)  Second, he expressed his belief, based upon the nonviolent histories of the offending cell mates, that the threats were harmless.[6]  (Pl. Dep. at 36.)  The next day, though, one of these cell mates attacked Mr. Rudd, and two others joined in the attack by "jump[ing] on [him]."  (Pl. Dep. at 41, 48-49; Ward Dep. at 36-37.)  It is undisputed that Mr. Rudd was "severely beaten" (Ward Summ. J. Br. at 4 (Doc. # 42)) and was transported to the emergency room and hospitalized for two weeks.  (Pl. Dep. at 48-49, 51.)  After his discharge, Mr. Rudd was returned to the Jail and placed in a cell by himself, and his medications were given to him regularly as prescribed.  (Pl. Dep. at 52, 76.)

Seeking, among other relief, at least "one million dollars" for the staph infection and the injuries he sustained when his cell mates attacked him (Compl. ¶ 14), Mr. Rudd filed this suit against Sheriff Ward, individually and in his official capacity, and against the Commission.  As alleged in the complaint, Mr. Rudd attributes the onset of his staph

---

[4]  Mr. Rudd says that the cell mates, who were complaining about his staph infection, wrote and signed a letter stating that they would attack Mr. Rudd if Sheriff Ward did not move him to a different cell.  Mr. Rudd, however, has not produced the letter because he says that it was stolen.  (Pl. Dep. at 37.)  The content of letter is hearsay, as discussed *infra*, and may not be considered in the analysis of Mr. Rudd's claims.

[5]  The court notes that Sheriff Ward denies that he "received any complaints" concerning threats made to Mr. Rudd by other inmates or any requests from Mr. Rudd to move to a different cell.  (Ward Dep. at 57; *see also* Ward Dep. at 57.)  For present purposes, the court accepts Mr. Rudd's testimony that he had a conversation with Sheriff Ward about moving to a different cell.

[6]  According to Mr. Rudd, Sheriff Ward told him that he (Sheriff Ward) knew these inmates' histories because they had been incarcerated for a "long time."  (Pl. Dep. at 36.)

infection to two causes:  "unkempt and foul jail conditions" (Compl. ¶ 5; *see also* Compl. ¶ 9), and the "brutal[] beat[ing]" he suffered from his cell mates.  (Compl., Ex. A.)  Also, he avers that staph infections were "prevalent in the jail."  (Compl. ¶ 9.)  Mr. Rudd further alleges that the attack was caused by "overcrowding of cells" and a "lack of proper facilities."  (Compl. ¶ 22; *see also* Compl. ¶ 17; Pl. Dep. at 29-30 (testifying that he seeks to recover for the attack, the staph infection and overcrowding).)  Moreover, he contends that he was "not provided proper medical attention and treatment following [the] assault." (Compl. ¶ 9.)

In the complaint, the statutory and constitutional bases for imposing liability against Defendants are laid out in kitchen-sink approach, with Mr. Rudd citing 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Fourth, Fifth, Eighth and Seventeenth Amendments to the United States Constitution.   However, in a prior Memorandum Opinion and Order, the court narrowed the claims upon Defendants' motions to dismiss.  The court dismissed Mr. Rudd's § 1983 claims against the Commission under the Fourth, Fifth, Fourteenth and Seventeenth Amendments.  (Sept. 10, 2007 Op. at 7 (Doc. # 20).)  The court also dismissed Mr. Rudd's § 1983 Eighth Amendment claims against the Commission to the extent that they were based on a theory of *respondeat superior*.[7]  (Sept. 10, 2007 Op. at 7.)  The court declined to dismiss

---

[7] The court notes that, at the motion to dismiss stage, Defendants analyzed this case as if Mr. Rudd were a convicted inmate, rather than a pretrial detainee (*see* Sept. 10, 2007 Op. at 7 n.4) and, thus, applied the Eighth Amendment's prohibition against cruel and unusual punishment to Mr. Rudd's claims. (*See* Sept. 10, 2007 Op. at 7 n.4.)  Mr. Rudd did not offer a contrary argument.  (*See, e.g.*, Compl. ¶ 4 (alleging that he "was lawfully detained due to serving a sentence for prior convictions"); Sept. 10, 2007 Op. at 7.)  There now is testimony suggesting that Mr. Rudd was a pretrial detainee.  (*See, e.g.*, Pl. Dep. at 19-20, 22-23.)  The Fourteenth Amendment's guarantee of due process, not the Eighth Amendment, applies to pretrial detainees.  *See Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1539 n.3 (11th Cir. 1994).  In their summary judgment briefs, however, Defendants have not raised the issue of Mr. Rudd's status, but continue to analyze the claims under the Eighth Amendment standard.  There is authority that, as concerns claims arising from an inmate's incarceration, the standard is the same under both

the Eighth Amendment claims in their entirety because Mr. Rudd had alleged issues arguably

related to the building and maintenance of an adequate Jail, namely, that the overcrowded

cells and "lack of proper facilities" caused his injuries.  (Sept. 10, 2007 Op. at 8.)  The court,

therefore, could not "say as a matter of law" at the motion to dismiss stage "that the

Commission did not fail to build and maintain a Jail and that such a failure, if ultimately

proved, did not constitute deliberate indifference to a substantial risk of serious harm to [Mr.]

Rudd in violation of the Eighth Amendment."  (Sept. 10, 2007 Op. at 8.)  In the same

Opinion, the court also dismissed all of Mr. Rudd's claims against Sheriff Ward in his

official capacity (Sept. 10, 2007 Op. at 4-6), but left intact Mr. Rudd's § 1983 constitutional

and § 1985 conspiracy claims for monetary damages against Sheriff Ward in his individual

capacity (Sept. 10, 2007 Op. at 6 n.3).[8]

---

amendments.  *See Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008) ("Pretrial detainees, who are not protected by the Eighth Amendment, can bring the same claims under the Fourteenth Amendment."); *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007) (analyzing an inmate's claim for deliberate indifference to serious medical needs and holding that "the standards under the Fourteenth Amendment are identical to those under the Eighth"); *Marsh v. Butler County*, 268 F.3d 1014, 1024 n.5 (11th Cir. 2001) ("We accept our precedents treating the [Eighth and Fourteenth] Amendments as the same in the context of incarceration."), *implicitly modified on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).  Given the lack of argument and based on the foregoing authorities, the court finds that, for purposes of this opinion, it is immaterial whether Mr. Rudd at the time of the events at issue was a pretrial detainee or a convicted prisoner.  Because during the course of this litigation the parties have referred to Mr. Rudd's claims as Eighth Amendment claims, the court will do the same, but with the recognition that case law involving a pretrial detainee's rights under the Fourteenth Amendment's Due Process Clause applies equally to convicted inmates.

[8] The court notes that, at the motion to dismiss stage, Sheriff Ward did not argue for dismissal of these claims, as did the Commission.  (*See, e.g.*, Sept. 10, 2007 Op. at 6 n.3.)

## IV.  DISCUSSION

Some of Mr. Rudd's claims survived Defendants' motion to dismiss.  At the summary judgment juncture, in opposing Defendants' properly-supported motions, Mr. Rudd must submit affidavits or other proper evidence "set[ting] out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (holding that the summary judgment non-movant must "present affirmative evidence in order to defeat a properly supported motion for summary judgment").  As set out below, Mr. Rudd has not fulfilled his burden.

### A. § 1983 Claims against Sheriff Ward

1. <u>Eighth Amendment Claims</u>

Liberally construing Mr. Rudd's claims against Sheriff Ward in his individual capacity, the court previously found that Mr. Rudd's complaint alleged deliberate indifference under the Eighth Amendment for (1) failure to provide adequate medical care, (2) inadequate conditions of confinement in that the Jail was unclean and overcrowded and (3) failure to protect Mr. Rudd against an attack by other inmates.  (Sept. 10, 2007 Op. at 12.)

Moving for summary judgment on the Eighth Amendment claims, Sheriff Ward says that he has submitted evidence demonstrating that Mr. Rudd received immediate, full and adequate treatment both for his staph infection and for the injuries he sustained from the assault.  (Ward Summ. J. Br. at 7-9.)  Sheriff Ward further contends that Mr. Rudd fails to carry his summary judgment burden because there is an absence of evidence (1) that Mr.

8

Rudd's staph infection was caused by any jail conditions or by the assault (Ward Summ. J. Br. at 3, 4), (2) that the Jail was either unclean or overcrowded (Ward Summ. J. Br. at 11, 12), or (3) that Sheriff Ward knew or should have known that Mr. Rudd was in danger of being attacked (Ward Summ. J. Br. at 4).  Sheriff Ward also raises qualified immunity as a defense.  (Ward Summ. J. Br. at 18-21.)  Sheriff Ward, thus, contends that summary judgment is due to be entered in his favor.

      a.  Medical Care

"Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment."  *Danley*, 540 F.3d at 1310.  There are three components to an Eighth Amendment deliberate indifference claim.  "[A] plaintiff must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Id.*  A government official's conduct rises to the level of deliberate indifference (1) when he "knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate," (2) when in certain circumstances there is an intentional delay in medical treatment, or (3) when treatment is shown to be "grossly inadequate" or based on "a decision to take an easier but less efficacious course of treatment."  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (internal quotation marks omitted).

Presuming that Mr. Rudd's injuries from the attack rise to the level of serious medical needs, the court agrees with Sheriff Ward that Mr. Rudd has not submitted any evidence to back up his lone allegation that the medical care he received was inadequate under the Eighth

Amendment's standard.[9]  (Compl. ¶ 9.)  Mr. Rudd confirmed that, after he was attacked, he was taken "immediately" to the hospital, that he was hospitalized for "two weeks," and that, upon his return to the Jail, he was "regularly" given his prescribed medications.  (Pl. Dep. at 49-52; *see also* Ward Dep. at 36-37, 39, 42-43; Rowe Aff. ¶¶ 5-8 (delineating the Jail's policies on medical care to inmates).)  Mr. Rudd has not presented any evidence, and the court found none in the record, establishing or suggesting that he was denied medical treatment or that the medical treatment he received was delayed or was grossly inadequate. Consequently, summary judgment is due to be entered in favor of Sheriff Ward on Mr. Rudd's Eighth Amendment claim alleging inadequate medical care.

      b.  Conditions of the Jail

The Eighth Amendment also encompasses prisoner claims that certain conditions of confinement – such as overcrowding, unsanitary facilities and inadequate protection from harm against other inmates – amount to cruel and unusual punishment.  *Wilson v. Seiter*, 501 U.S. 294, 296 (1991) (overcrowding); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (sanitation issues); *Purcell v. Toombs County, Ga.*, 400 F.3d 1313, 1320-21 (11th Cir. 2005) (inmate-on-inmate violence).  Such claims are subject to analysis under the deliberate indifference standard; however, only those conditions that, from an objective standpoint,

---

[9] In his complaint, Mr. Rudd complains only about the medical attention he received after he was assaulted.  (Compl. ¶ 9.)  He makes no complaint about the medical treatment he received for his staph infection following the January 6, 2005, diagnosis.  But, even if such a claim were present, there is, as Sheriff Ward argues, an absence of admissible evidence that the Jail's response to Mr. Rudd's complaint of a fever and the medical treatment he received following the January 6 staph infection diagnosis constituted deliberate indifference to his serious medical needs.

deny inmates "the minimal civilized measure of life's necessities" are "sufficiently serious" to be actionable under the Eighth Amendment, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted), as a prisoner has no constitutional guarantee to a "comfortable prison[]," *Rhodes*, 452 U.S. at 349; *see also Wilson*, 501 U.S. at 298 (observing that the "holding in *Rhodes* turned on the objective component of an Eighth Amendment prison claim").   There also is a subjective component to a deliberate indifference claim, *Wilson*, 501 U.S. at 302-03, requiring that the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Marsh*, 268 F.3d at 1028.   It is not enough to establish that the official should have known of the risk of harm. *Farmer*, 511 U.S. at 837.

Overall, Eighth Amendment claims challenging conditions of confinement, such as the ones alleged by Mr. Rudd, comprise three elements: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).   As to causation, the Eleventh Circuit has explained, "The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1584 (11th Cir. 1995) (internal quotation marks omitted).

11

Here, the record is barren of any evidence that the Jail was unclean.  To the contrary, the evidence is plentiful that the Jail was sanitary.  The Commission has submitted evidence (1) that the policy of the Geneva County Sheriff's Office was that inmates would be housed in humane and sanitary conditions, (2) that inmates were provided cleaning materials each day for sanitizing the living areas of their cells under the supervision of a member of the Jail staff, and (3) that all common areas of the Jail were cleaned by trusties every morning. (Rowe Aff. ¶ 10.)

Although faced with this evidence on summary judgment defeating his claim, Mr. Rudd has not attempted to counter it.  He has not identified any particular Jail condition which he says was unsanitary from which Sheriff Ward could infer that a substantial risk of serious harm existed.[10]  He has produced no evidence that Sheriff Ward had knowledge that contaminated conditions existed which could result in Mr. Rudd or other inmates contracting a staph infection.  Nor is there any evidence that there were any prior incidents of staph infections at the Jail.  The lone statement from a cell mate that Mr. Rudd "contracted staph infection due to the deplorable conditions of the Geneva County Jail" (Nunn Aff. at 1 (Defs. Ex. K)) is conclusory and wholly insufficient to carry Mr. Rudd's summary judgment burden on his Eighth Amendment claim challenging the cleanliness of the conditions of his confinement. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment

---

[10] As to Mr. Rudd's contention that he slept by "a solid steel rusty wall," see the court's discussion on causation, *infra* p. 14.

motion").  Consequently, Mr. Rudd's claim that the conditions of the Jail were so unsanitary as to violate the Eighth Amendment, as well as his related contention that his staph infection was caused by unclean Jail conditions, cannot survive Sheriff Ward's motion for summary judgment.

Regarding his claim of overcrowding, Mr. Rudd complains that he and two other inmates had to sleep on a bed on the floor, that the number of inmates exceeded the number of permanent beds, and that there was not much room in his cell to "walk around."  (Pl. Dep. at 61; *see also* Pl. Dep. at 44.)  Sheriff Ward makes two arguments in support of summary judgment.  First, he contends that evidence of overcrowding, without more, is insufficient to demonstrate an Eighth Amendment claim, but that, in any event, there is no evidence that the Jail was overcrowded.  (Ward Summ. J. Br. at 12.)  Second, Sheriff Ward focuses on the causation element of Mr. Rudd's Eighth Amendment overcrowding claim.  (Ward Summ. J. Br. at 3-4.)

It is true that around the time that Mr. Rudd was incarcerated, there were approximately seven more inmates than permanent "bunks," which appears to have resulted in some inmates sleeping on beds on the floor.  (*See* Ward Dep. at 48; Jail Capacity Log (Defs. Ex. C).)  Sheriff Ward is correct, though, that this fact, in and of itself, does not make out an Eighth Amendment cruel and unusual punishment claim.  In *Rhodes*, involving an Eighth Amendment challenge to a prison's practice of double celling inmates, the Supreme Court rejected as insufficient to rise to the level of cruel and unusual punishment the fact,

13

among others, that the state prison housed 38 percent more inmates than its "designed capacity."  452 U.S. at 348 (internal quotation marks omitted).  The Court held that such a "general consideration[] fall[s] far short in . . . proving cruel and unusual punishment," absent evidence that double celling "inflict[ed] unnecessary or wanton pain or [was] grossly disproportionate to the severity of crimes warranting imprisonment."  *Id.* at 349.  Sheriff Ward, though, says that there is an absence of evidence that the inmate occupancy in Mr. Rudd's cell caused any of the pain or harm of which Mr. Rudd complains.  (Ward Summ. J. Br. at 3-4.)  The court agrees.

Mr. Rudd complains, for instance, that his bed was next to "a solid steel rusty wall." (Pl. Dep. at 54.)  It is not clear, but it may be that Mr. Rudd contends that, but for the overcrowding, he would not have had to sleep next to this wall, and that the proximity of his bed to a rusty wall caused his staph infection.[11]  However, as Sheriff Ward aptly points out, the only evidence upon which Mr. Rudd relies to establish causation is hearsay.  (Ward Summ. J. Br. at 3-4.)  That evidence is testimony from Mr. Rudd that his treating physician told him that he contracted a staph infection from the Jail (Pl. Dep. at 54) and is precisely the type of rank hearsay which cannot be considered at the summary judgment stage.  *See Macuba v. DeBoer*, 193 F.3d 1316, 1324-25 (11th Cir. 1999).  Additionally, in his complaint, Mr. Rudd alleges that overcrowding was a contributing factor leading to his cell mates

---

[11] Ascertaining from the record what harms Mr. Rudd says he suffered from alleged overcrowded conditions has not been an easy task.  For the sake of thoroughness, the court will address this possible argument.

attacking and injuring him, (Compl. ¶ 22), but again there is no *evidence* which supports that contention.  To the extent that during his deposition Mr. Rudd expressed his belief that the assault was related to an increase in the Jail's inmate population,[12] and it is dubious that his deposition contains such testimony, his "naked assertion" falls woefully short of satisfying his evidentiary burden on the issue of proximate cause.  *Doe v. Sullivan County, Tenn.*, 956 F.2d 545, 550 (6th Cir. 1992) (To demonstrate proximate cause, "more is required than [a] plaintiff's naked assertion that the assault would not have occurred but for the offensive conditions.").  Naked assertions and inadmissible hearsay are all that Mr. Rudd has provided on the issue of causation.  Accordingly, the court finds that Mr. Rudd cannot demonstrate that his injuries were proximately caused by what he contends was an excessive number of inmates in his cell.  *See Hale*, 50 F.3d at 1584 ("The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries." (internal quotation marks omitted)).

Similarly, Mr. Rudd fails to raise a genuine issue of material fact that the number of inmates in his cell was "grossly disproportionate to the severity of crimes warranting imprisonment." *Rhodes*, 452 U.S. at 348.  While Mr. Rudd's sleeping situation may not have

---

[12] It is worth noting that Sheriff Ward testified that, in his opinion backed by fourteen years of experience as the sheriff, the Jail was neither overcrowded nor unsafe during the time that Mr. Rudd was incarcerated.  (Ward Dep. at 46, 48, 55-56.)  He said that so long as the Jail's capacity did not exceed 55 inmates, he believed that the inmates were secure from escape and safe from harm.  (Ward Dep. at 55-56.)  When inmate capacity reached somewhere between 50 and 55 inmates, however, Sheriff Ward said he began transferring inmates to other jails.  (Ward Dep. at 56.)

been ideal, "ideal" is not the Eighth Amendment standard.  *See Rhodes*, 452 U.S. at 349 ("[T]he Constitution does not mandate comfortable prisons.").  In short, there is no inference establishing or suggesting that these conditions were "inhumane."  *Farmer*, 511 U.S. at 832.

Finally, turning to Mr. Rudd's claim that Sheriff Ward violated the Eighth Amendment by his deliberate indifference to Mr. Rudd's safety, Sheriff Ward argues that there is an absence of evidence that he was on notice that Mr. Rudd was in danger of being attacked and that, therefore, Mr. Rudd cannot prove deliberate indifference.  (Ward Summ. J. Br. at 4.)  The court agrees.

To demonstrate notice, Mr. Rudd relies on his testimony about a letter, allegedly drafted by his assailants documenting their intent to attack him, which Mr. Rudd says he showed to Sheriff Ward.  (Pl. Dep. at 36.)  This letter, however, is not in evidence, and Mr. Rudd's testimony as to the contents of the letter presents multiple hearsay problems.  *See* Fed. R. Evid. 801(c); (Ward Summ. J. Br. at 16 (arguing hearsay).)  The content of the letter, offered only through Mr. Rudd's testimony, is inadmissible hearsay and cannot be used to demonstrate that Sheriff Ward had knowledge of a substantial risk of serious harm to Mr. Rudd.[13]  *Macuba*, 193 F.3d at 1324-25.  Mr. Rudd also alleges in his complaint that Sheriff Ward was "aware of fights occurring in cells" (Compl. ¶ 18), but there is no evidence that

---

[13] The court notes that, even if such a letter were in evidence, it is doubtful that it would suffice to show deliberate indifference.  *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) ("threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm").  Moreover, as the testimony bore out in at least one case, it is common for inmates to allege threats in an effort to "arrange a room move."  *Pagels v. Morrison*, 335 F.3d 736, 741 (8th Cir. 2003).

there was a single past incident of inmate fighting whatsoever.  (*See generally* Ward Dep.; *see also* Adkison Dep. at 24-25.)  Hence, missing in this case is the type of evidence legally sufficient to put a prison official on notice that an inmate is subject to a substantial risk of serious harm at the hands of his fellow inmates.  *See, e.g.*, *Purcell*, 400 F.3d at 1320 ("an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; 'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable'" (internal quotations omitted)).

Mr. Rudd, therefore, is left with his testimony that he "went to see" Sheriff Ward, that he showed him a letter, and that he requested to be moved to a different cell based upon a perceived harm, but that Sheriff Ward declined Mr. Rudd's request based (1) on the unavailability of space and (2) on his personal belief that the offending inmates were not violent and would "not hurt [him]."  (Pl. Dep. at 36.)  The court agrees with Sheriff Ward that this evidence also falls short of delineating "specific facts" needed to "show[] a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); (*see* Ward Summ. J. Br. at 17-18.)

Although arguably it can be implied from Sheriff Ward's response that Mr. Rudd requested to be moved to a different cell based upon a harm Mr. Rudd perceived,[14] there is no admissible evidence as to what details, if any, Mr. Rudd conveyed to Sheriff Ward about what that harm entailed.  The admissible testimony comprises five lines on a single page of

---

[14] There is no testimony as to what Mr. Rudd told Sheriff Ward.

a deposition transcript. (Pl. Dep. at 36, lines 11-16.) Because that testimony is undeveloped, all details are lacking. There are, therefore, no facts from which it can be determined whether Mr. Rudd communicated to Sheriff Ward facts from which Sheriff Ward could draw an inference that the harm was serious and that the risk of that harm was substantial. *Farmer*, 511 U.S. at 837. But, even if there were facts from which that inference could be made, Mr. Rudd has not provided any evidence that Sheriff Ward drew that inference. *Id.* Indeed, the facts, limited as they may be, reveal that Sheriff Ward did not, as it was Sheriff Ward's perception that, based on his knowledge of the offending cell mates' nonviolent histories, they did not pose any harm to Mr. Rudd. Mr. Rudd has not presented any evidence that Sheriff Ward had been exposed to any information, from another source, which would countermine his perception or from which it could be inferred that he was "merely refus[ing] to verify underlying facts that he strongly suspected to be true." *Id.* at 843 n.8. Accordingly, the court finds that Mr. Rudd fails to raise a genuine issue of material fact on the issue of deliberate indifference, an essential element of his case on which he has the burden of proof. Sheriff Ward, therefore, is entitled to summary judgment on Mr. Rudd's Eighth Amendment claim that Sheriff Ward's failure to move him to a different cell amounts to a deliberately indifferent failure to protect his safety.[15]

---

[15] The court notes that the complaint alleges – albeit in very general terms – that Mr. Rudd's injuries resulted from an "official policy" for which Sheriff Ward should be held liable. (Compl. ¶ 10); *see West v. Tillman*, 496 F.3d 1321, 1332 (11th Cir. 2007) (analyzing § 1983 claim against Alabama sheriff that the absence of certain policies was unconstitutional); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (A plaintiff may establish § 1983 supervisory liability "where the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'"). The record does not raise a genuine issue of material fact under a custom or policy theory of liability. Namely, Sheriff Ward

## 2. *Other Claims Against Sheriff Ward*

Mr. Rudd also brings claims against Sheriff Ward in his individual capacity pursuant to 42 U.S.C. § 1983, alleging violations of rights guaranteed by the Fourth, Fifth, Fourteenth and Seventeenth Amendments.  Sheriff Ward argues that Mr. Rudd "has not alleged a valid cause of action under these Amendments."  (Ward Summ. J. Br. at 21-23.)

The court's reasons, set out in its prior opinion, for dismissing the § 1983 Fourth, Fifth, Fourteenth and Seventeenth Amendment claims against the Commission are relevant as to Sheriff Ward.  (Sept. 10, 2007 Op. at 7.)  Presumably, Mr. Rudd relies on the Fifth Amendment's Due Process Clause, but that clause "applies only to the federal government." *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1335 (M.D. Ala. 2007) (internal quotation marks omitted).  And there is no evidence implicating the Fourth or Seventeenth Amendments. (Sept. 10, 2007 Op. at 7.)  While arguably the Fourteenth Amendment applies, *see supra* footnote 7, any Fourteenth Amendment claim fails for the identical reasons as the Eighth Amendment claims.[16]  Accordingly, the court finds that there are no genuine issues

---

has introduced evidence of the Jail's comprehensive policies for rendering medical care to inmates, for protecting inmates from harm, and for maintaining humane and sanitary conditions in the Jail.  (Rove Aff. ¶¶ 4-11; *see also* Ward Summ. J. Br. at 9, 11-12.)  Mr. Rudd has not challenged any of the policies (or the lack of one) as unconstitutional, and it is difficult, if not impossible, to predict how any challenge could be made.  In any event, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000).

[16] The court also agrees with Sheriff Ward that, although Mr. Rudd's complaint contains a cursory reference to 42 U.S.C. § 1985, summary judgment is appropriate on any § 1985 claim because Mr. Rudd has presented no evidence of an actionable wrong under this conspiracy statute.  (Ward Summ. J. Br. at 21.)

of material fact for trial and that Sheriff Ward is entitled to judgment as a matter of law on these claims.[17]

## B.  *§ 1983 Claims against the Commission*

Only the Eighth Amendment claims remain against the Commission.  Urging the court to enter summary judgment in its favor on these claims, the Commission emphasizes that its duties with regard to the Geneva County Jail are to build, maintain and fund it, not to operate it, and that "the *undisputed* evidence shows that [it] fulfilled th[ese] dut[ies]" in a constitutional manner.  (Commission Summ. J. Br. at 9 (Doc. # 40).)  The Commission contends that, to the extent that Mr. Rudd's Eighth Amendment claims are based on alleged deficiencies in the operation of the Jail or the actions of Sheriff Ward or his employees, those claims cannot survive summary judgment.  (Commission Summ. J. Br. at 12.)  In short, the Commission contends that there is no evidence that it is responsible for any of the alleged unconstitutional mistreatment Mr. Rudd says he endured while incarcerated at the Geneva County Jail and, thus, it cannot be held liable for any Eighth Amendment violation. (Commission Summ. J. Br. at 9-10.)

The Eighth Amendment proscribes cruel and unusual punishment, and the claims that can be brought under the cruel and unusual punishment clause are varied.  *Danley*, 540 F.3d at 1306.  Hence, it is important preliminarily to define the Eighth Amendment claims against the Commission.  A local government, such as the Commission, "can be directly responsible

---

[17] Because Mr. Rudd has not demonstrated that his constitutional rights were violated, his § 1983 claims fail on the merits.  It, therefore, is unnecessary for Sheriff Ward to rely on, or for the court to address, the defense of qualified immunity.

for a constitutional violation due to its acts or omissions." *Marsh*, 268 F.3d at 1027. However, for liability to attach "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the [county] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Important in the present context, § 1983 liability can attach to the Commission "only for acts for which [it] is actually responsible," *Marsh*, 268 F.3d at 1027, a point pressed by the Commission.

As the court discussed in its September 10, 2007 Opinion, it is well established that "Alabama counties have no responsibility for daily operation of county jails and no authority to dictate how jails are run." *Id.; see also Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1288-91 (11th Cir. 1998). Rather, an Alabama county commission's role *vis-a-vis* its county jail is limited to funding, "erecting and maintaining" it. *Marsh*, 268 F.3d at 1027; *see also* Ala. Code § 11-14-10 ("Each county within the state shall be required to maintain a jail within their county."); Ala. Code § 11-14-13 (county is responsible for building and maintaining a jail "of sufficient size and strength"). It is the sheriff who has authority over the inmates, the jail and its employees, and "[t]he authority the Sheriff has over the Jail is totally independent of the county commission." *Marsh*, 268 F.3d at 1028; *see also McMillian v. Monroe County, Ala.*, 520 U.S. 781, 788 (1997) (holding that an Alabama sheriff "represents the State of Alabama and is therefore not a county policymaker").

In light of the foregoing principles, the Commission "will have violated [Mr. Rudd's] Eighth Amendment rights if its failure to maintain the Jail constituted deliberate indifference

21

to a substantial risk of serious harm to [Mr. Rudd]." *Marsh*, 268 F.3d at 1027.  In other words, "a county might be liable when the physical conditions of the jail have deteriorated and pose a serious threat to the safety of inmates and when those conditions have caused the injury to the inmates." *Id.* at 1027 n.7.  For the reasons to follow, the court finds that there is nothing in the record which raises a genuine issue of material fact as to the Commission's liability.

The evidence confirms that the Commission exercised no authority concerning the promulgation or enforcement of policies for the daily operation of the Geneva County Jail. (Adkison Dep. at 20-21, 24-25.[18])  There also is undisputed evidence that the Commission did not contribute in any way to decisions regarding Mr. Rudd or any other inmate's treatment at the Jail.  (Adkison Dep. at 16-17.)  Rather, consistent with the controlling legal authorities discussed above, the Commission's duties concerning the Jail were limited to funding and maintenance.  (Adkison Dep. at 16.)

In general terms, the evidence reveals that the Commission fulfilled those duties.  The Commission established an annual budget for the Jail, and there is no evidence that at any time relevant to this lawsuit the funding for hiring, training, maintenance and general operations was inadequate.  (*See* Ward Dep. at 9-10; Adkison Dep. at 9, 13.)  While costs to operate the Jail sometimes exceeded the allotted budget, the Commission readily provided additional funding upon Sheriff Ward's request.  (Ward Dep. at 9; Adkison Dep. at 13.)

---

[18] The Honorable Harry Adkison, by his elected position as probate judge, was the chairman of the Commission during all times relevant to this lawsuit.  (Adkison Dep. at 6.)

Moreover, there is ample evidence that improvements and maintenance at the Jail were ongoing during the decade preceding Mr. Rudd's incarceration; among other things, plumbing, storage facilities and cells were upgraded.  (Adkison Dep. at 14-15.)  As elaborated upon in the preceding subsection, there is no evidence that the Jail's structure was dilapidated or that the physical conditions of the Jail had deteriorated, as arguably claimed by Mr. Rudd in his complaint.

In specific terms, the only other potential Eighth Amendment claim against the Commission which can be gleaned from the record arises from Mr. Rudd's complaint of "overcrowding."  (Pl. Dep. at 41.)  Arguably, Mr. Rudd makes this assertion to support a claim that the Commission failed to build a jail "of sufficient size."  Ala. Code § 11-14-13; *Marsh*, 268 F.2d at 1027.  But, in rejecting Mr. Rudd's claims against Sheriff Ward, discussed *supra*, the court found that Mr. Rudd failed to raise a genuine issue of material fact that the overcrowding about which he complains constitutes an Eighth Amendment violation; hence, he cannot establish an essential element of his claim against the Commission, *i.e.*, "that his constitutional rights were violated."  *McDowell*, 392 F.3d at 1289.

Based on the foregoing, the court finds "that there is no genuine issue as to any material fact and that [the Commission] is entitled to a judgment as a matter of law" on Mr. Rudd's Eighth Amendment claims against it.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323.

## V.  CONCLUSION

In sum, the court finds that Defendants have satisfied their initial burden on summary judgment by demonstrating the absence of a genuine issue of material fact for trial, but that

Mr. Rudd has not sustained his burden by submitting evidence which demonstrates a genuine issue of material fact for trial. *See Celotex Corp.,* 477 U.S. at 322-323. Having failed to "present affirmative evidence in order to defeat [the] properly supported motion[s] for summary judgment," *Anderson*, 477 U.S. at 257, the court finds that summary judgment is due to be granted in Defendants' favor.

Accordingly, it is ORDERED that the motions for summary judgment filed by Defendants Geneva County Commission and Sheriff Greg Ward (Docs. # 39, 41) are GRANTED.

A judgment in accordance with this Memorandum Opinion and Order shall be entered separately.

DONE this 18th day of December, 2008.

_____/s/   W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE